RIETHMILLER v BLUE CROSS & BLUE SHIELD OF MICHIGAN

Docket No. 79939. Submitted October 6, 1985, at Detroit. Decided April 22, 1986.

Plaintiff, Robert F. Reithmiller, filed suit in Wayne Circuit Court against defendant, Blue Cross & Blue Shield of Michigan, alleging that defendant terminated his employment on the basis of his age in violation of the Civil Rights Act and that by terminating his employment defendant breached an employment contract which provided that plaintiff could only be terminated for cause. Following a bench trial, Robert J. Colombo, Jr., J., the circuit court concluded that plaintiff's termination resulted from unlawful discrimination, but that plaintiff's termination did not result in a breach of an employment contract. The circuit court awarded plaintiff a judgment for $103,624, plus interest, taxable costs and attorney fees. Defendant appealed claiming that the circuit court erred by finding that plaintiff was not required to mitigate his damages by accepting an independent contractor position which defendant offered to plaintiff prior to his discharge from employment. Plaintiff cross-appealed raising several issues concerning damages and the amount of the attorney fee award, and asserting that the circuit court erred in not finding a breach of an employment contract. *Held:*

1. The circuit court's finding that plaintiff made every effort to mitigate his damages was supported by the evidence and was not clearly erroneous. Defendant did not establish that a substantially equivalent position was available and that plaintiff failed to use reasonable care or diligence in refusing such a

REFERENCES

Am Jur 2d, Civil Rights §§ 226-242, 513.

Am Jur 2d, Labor Relations §§ 9, 43, 45, 406, 600, 1196, 1830-1833.

Am Jur 2d, Master and Servant §§ 14-70, 376, 396.

Age discrimination claimant's right to suit in federal court as affected by manner and timeliness of claimant's resort to state remedies under § 14(b) of Age Discrimination in Employment Act (29 USCS § 633(b)). 56 ALR Fed 627.

Validity and enforceability of provision that employer shall be liable for stipulated damages on breach of employment contract. 40 ALR4th 285.

position. Although plaintiff's job responsibilities and work site would have remained the same as an independent contractor, plaintiff's compensation, benefits and status would have been drastically changed.

2. The circuit court did not err in finding that defendant did not breach an implied employment contract to discharge plaintiff only for cause. While plaintiff pointed to some policy statements that inferentially suggested that there might be a right to discharge only for cause, there was evidence of an explicit statement in defendant's employee handbook which stated that defendant reserved the right to release an employee at any time for any reason.

3. Future damages may be recovered by a successful plaintiff who sues his employer under the Civil Rights Act. Such damages should be considered by a trial court as a remedy, but ordinarily should not be awarded unless reinstatement is impracticable or impossible. In this case, the circuit court did not abuse its discretion in deciding not to award plaintiff damages for future lost wages.

4. The evidence did not support a finding that plaintiff suffered emotional or mental distress as a result of his discharge from employment. The circuit court therefore did not err in refusing to award damages on that ground.

5. Plaintiff failed to prove damages on his claim for lost pension benefits. The circuit court's determination that the damages for the lost pension were too speculative was supported by the evidence and therefore not erroneous.

6. The circuit court did not abuse its discretion in awarding plaintiff only a portion of his attorney fees.

Affirmed.

1. MASTER AND SERVANT — WRONGFUL DISCHARGE — DAMAGES — MITIGATION OF DAMAGES.

A wrongfully discharged employee is obligated to mitigate damages by accepting employment of a like nature; the criteria for determining like nature include the type of work, the hours of labor, the wages, tenure, working conditions, etc.; the question of whether or not an employee was reasonable in not seeking or accepting particular employment is a question for the trier of fact.

2. MASTER AND SERVANT — WRONGFUL DISCHARGE — DAMAGES — MITIGATION OF DAMAGES — BURDEN OF PROOF.

Once a plaintiff establishes a prima facie case of a wrongful discharge and presents evidence on the issue of damages, the

burden of producing sufficient evidence to establish lack of diligence to mitigate damages shifts to the defendant employer.

3. MASTER AND SERVANT — EMPLOYMENT CONTRACTS — TERMS OF EMPLOYMENT — PERSONNEL POLICY.

   Statements by an employer of its personnel policy and procedure can give rise to contractual rights in employees without evidence that the parties mutually agree that the policy statements create contractual rights in the employee where the employer contemplates mutual adherence to the stated policies and therefore derives benefits from a cooperative and loyal work force.

4. MASTER AND SERVANT — EMPLOYMENT CONTRACTS — DISCHARGE FOR CAUSE.

   A provision of an employment contract providing that an employee shall not be discharged except for cause is legally enforceable although the contract is not for a definite term, and such a provision may become part of the contract either by express agreement, oral or written, or as a result of an employee's legitimate expectations grounded in an employer's policy statements.

5. MASTER AND SERVANT — EMPLOYMENT CONTRACTS — IMPLIED CONTRACTS.

   A subjective expectancy on the part of an employee that his employment was to be continuing is not sufficient to establish a contract implied in fact for continued employment but for good cause where the circumstances do not show a common understanding or mutual intent to create such a contract.

6. CIVIL RIGHTS — CIVIL RIGHTS ACT — REMEDIES — FUTURE DAMAGES — MASTER AND SERVANT — WRONGFUL DISCHARGE.

   A trial court may award future lost wages to a plaintiff who successfully prevails in a suit against his employer alleging unlawful discrimination under the Civil Rights Act resulting from the plaintiff's discharge; in deciding whether to award such damages the court should look to (1) whether reinstatement would be a feasible remedy, (2) the employee's prospects for other employment, and (3) the number of years remaining before the employee would be faced with mandatory retirement; the plaintiff need not seek reinstatement as a prerequisite to a claim for future lost wages where it is clear that reinstatement is not a viable alternative (MCL 37.2801[1]; MSA 3.548[801][1]).

7. CIVIL RIGHTS — CIVIL RIGHTS ACT — REMEDIES — DAMAGES.

    A successful plaintiff in a suit under the Civil Rights Act may recover damages for mental and emotional distress, upon proof thereof.

8. CIVIL RIGHTS — CIVIL RIGHTS ACT — REMEDIES — DAMAGES — LOST PENSION BENEFITS — MASTER AND SERVANT — WRONGFUL DISCHARGE.

    A plaintiff who successfully sues his employer under the Civil Rights Act may recover damages for lost pension benefits, in some cases even where the benefits had not vested, if such damages are proved with reasonable certainty.

9. CIVIL RIGHTS — CIVIL RIGHTS ACT — ATTORNEY FEES.

    The decision to grant or deny an award of attorney fees in a suit under the Civil Rights Act is within the discretion of the trial court (MCL 37.2802; MSA 3.548[802]).

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *Donald J. Gasiorek* and *Richard D. Toth*), for plaintiff.

*Kristine J. Galien,* for defendant.

Before: BRONSON, P.J., and T. M. BURNS and C. W. SIMON, JR.,* JJ.

PER CURIAM. Plaintiff, a doctor, filed suit against defendant, Blue Cross & Blue Shield of Michigan alleging that defendant terminated his employment on the basis of his age in violation of the Civil Rights Act, MCL 37.2101 *et seq.;* MSA 3.548 (101) *et seq.,* and that by terminating his employment defendant breached an employment contract which provided that plaintiff could only be terminated for cause. Following a bench trial in Wayne Circuit Court, it was determined that plaintiff's termination resulted from unlawful age discrimination, but the trial court also concluded that plaintiff's

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

termination did not result in a breach of an employment contract. Plaintiff received a judgment in the amount of $103,624, plus interest, taxable costs and attorney fees.

Defendant appeals as of right claiming that the trial court erred in finding that plaintiff was not required to mitigate his damages by accepting an independent contractor position which was offered to him prior to his termination. Plaintiff has also filed a cross-appeal raising several issues concerning damages and the amount of attorney fees awarded, and asserting that the lower court erred in not finding a breach of an employment contract.

At trial, plaintiff testified that in 1975 he decided to seek employment of a nonclinical nature. He desired a salaried position that would provide him with monetary security that would extend through retirement age and protect him in the event he became disabled. Plaintiff contacted an employment agency specializing in medical personnel, which advised him of a potential position with BCBSM.

After a personal interview and some negotiations, plaintiff eventually accepted an offer of employment with BCBSM as a permanent part-time medical consultant. Plaintiff was fifty-eight-years-old at the time, and was given a starting salary of $16 an hour plus company provided benefits for approximately twenty hours of work per week. It was also specifically understood that after one year of service plaintiff could participate in the BCBSM pension program. Participation in the retirement program was extremely important to plaintiff.

In March, 1980, plaintiff received a memorandum indicating that it was BCBSM's intention to place part-time consultants on a contract method of remuneration sometime prior to 1981. This

intention was finalized in a November 5, 1981, memorandum to plaintiff stating that BCBSM would be eliminating plaintiff's job. Plaintiff was offered a contract as an independent contractor. Acceptance of the contract would have left plaintiff performing essentially the same work he was performing as an employee. However, plaintiff's status as an independent contractor would have entitled him to no company sponsored benefits. Plaintiff's salary as an independent contractor would have increased to $32 per hour for approximately sixteen hours of work per week.

Plaintiff made a counterproposal to the BCBSM offer asking them to insert language into his proposed contract as an independent contractor which would have reserved plaintiff's rights and benefits which he had as an employee. BCBSM refused plaintiff's proposal and ultimately terminated him from his employment. Prior to his termination, plaintiff was allegedly informed by a Dr. Shekerjian that BCBSM was looking for a "young Turk" to move in and work full-time instead of sixty to sixty five year-old part-timers. Following his termination plaintiff filed the present action.

I

Defendant's sole claim on appeal is that the trial court erred by finding that plaintiff was not obligated to accept work as an independent contractor in order to mitigate his damages. According to defendant, plaintiff ignored his obligation to mitigate damages when he affirmatively rejected an offer of substantially equivalent employment with BCBSM as an independent contractor. As a result, defendant argues that plaintiff is precluded from recovering any award for back pay and lost fringe benefits for BCBSM's allegedly unlawful discrimination against him.

In *Brewster v Martin Marietta Aluminum Sales, Inc,* 145 Mich App 641, 663; 378 NW2d 558 (1985), this Court stated:

> · "It is well established that a plaintiff must make every reasonable effort to mitigate damages. . . . Such a defense, however, is an affirmative one, and proof of plaintiff's failure to mitigate rests upon the defendant. . . . A wrongfully discharged employee is obligated to mitigate damages by accepting employment of a 'like nature.' . . . The criteria for determining 'like nature' include the type of work, the hours of labor, the wages, tenure, working conditions, etc. Whether or not an employee is reasonable in not seeking or accepting particular employment is a question for the trier of fact." [Quoting *Higgins v Kenneth R Lawrence, DPM, PC,* 107 Mich App 178, 181; 309 NW2d 194 (1981) (citations omitted).]

See also, *Ford Motor Co v EEOC,* 458 US 219, 231-232; 102 S Ct 3057; 73 L Ed 2d 721 (1982), where the Court stated that a claimant forfeits his right to back pay if he refuses a job "substantially equivalent" to the one he was denied.

Thus, once a plaintiff establishes a prima facie case of an illegal discharge and presents evidence on the issue of damages, the burden of producing sufficient evidence to establish lack of diligence to mitigate damages shifts to the defendant. The defendant may satisfy this burden only if it establishes that substantially equivalent positions were available and that the plaintiff failed to use reasonable care and diligence in seeking such positions. As previously indicated, that determination is a question of fact. *Resimas v Michigan Dep't of Mental Health,* 714 F2d 614, 624 (CA 6, 1983), cert den 466 US 950; 104 S Ct 2151; 80 L Ed 2d 537 (1984). *Brewster, supra.*

In the present case, the trial court found "that

plaintiff made every effort to mitigate his damages." The trial court's findings of fact on this issue are supported by the record and not clearly erroneous. BCBSM simply did not establish that a substantially equivalent position was available and that plaintiff failed to use reasonable care or diligence in refusing such a position. Although plaintiff's job responsibilities and work site would have remained the same as an independent contractor, plaintiff's *compensation, benefits and status* would have been drastically changed.

As an employee, plaintiff had been entitled to various company-provided benefits, including the right to participate in BCBSM's pension plan. As an independent contractor, plaintiff was entitled to no benefits. Further, with respect to the independent contractor position, BCBSM was only required to provide plaintiff with 16 hours of work a week for forty-nine weeks at $32 per hour. Plaintiff had been working at least twenty hours a week as an employee at an hourly rate at the time of his termination of $20.79. The value of plaintiff's benefit package amounted to between 41.3 percent and 52 percent of plaintiff's salary.

BCBSM's contention that plaintiff's compensation was substantially unchanged is unpersuasive. BCBSM maintains that the proposed raise from $20.79 to $32 per hour more than adequately compensated plaintiff for any loss of benefits. Defendant ignores the fact that it was only required to supply plaintiff with sixteen hours of work under the proposed contract. Further, BCBSM ignores the fact that the character of the compensation provided was substantially different. For the most part, company-provided fringe benefits are not included as income for tax purposes. As an independent contractor all of plaintiff's compensation would have been taxable as income. Finally, it was un-

clear whether BCBSM would provide any liability insurance to protect plaintiff in the event of a lawsuit arising out of decisions made by plaintiff with respect to his work as an independent contractor for BCBSM.

Therefore, we hold that the trial court did not err in finding as a matter of fact that plaintiff was not obligated to mitigate his damages by accepting work as an independent contrator for BCBSM.

II

Plaintiff's first issue on cross-appeal is that the trial court erred in not finding that BCBSM had breached a contract of employment by discharging plaintiff without good cause. Plaintiff raises this issue on appeal because it relates to the trial court's award of damages. According to plaintiff, if the trial court had found in his favor on the breach of contract claim, future damages would have been awardable pursuant to basic common-law breach of contract principles.

Plaintiff's breach of employment contract claim was based on *Toussaint v Blue Cross & Blue Shield,* 408 Mich 579; 292 NW2d 880 (1980), reh den 409 Mich 1101 (1980). In that case, our Supreme Court stated that when an employer makes statements in employee policy manuals or otherwise which tend to create legitimate expectations in the employees' minds that they will be discharged only for just cause, the employer may be found, under a theory of implied contract, to fulfill those legitimate expectations by discharging only for just cause. 408 Mich 598-599. The Court further stated that:

While an employer need not establish personnel policies or practices, where an employer chooses to

establish such policies and practices and makes them known to its employees, the employment relationship is presumably enhanced. The employer secures an orderly, cooperative and loyal work force, and the employee the peace of mind associated with job security and the conviction that he will be treated fairly. No pre-employment negotiations need take place and the parties' minds need not meet on the subject, nor does it matter that the employee knows nothing of the particulars of the employer's policies and practices or that the employer may change them unilaterally. It is enough that the employer chooses, presumably in its own interest, to create an environment in which the employee believes that, whatever the personnel policies and practices, they are established and official at any given time, purport to be fair, and are applied consistently and uniformly to each employee. The employer has then created a situation "instinct with an obligation." [408 Mich 613.]

Thus, under *Toussaint,* the right to continued employment absent just cause for termination may be enforceable in contract because of stated employer policies and established procedures. 408 Mich 618. Also, an employer's conduct through the acts of its supervisory and management agents may establish a policy of termination only for just cause. *Brewster, supra.* However, in *Schwartz v Michigan Sugar Co,* 106 Mich App 471, 478; 308 NW2d 459 (1981), lv den 414 Mich 870 (1982), it was recognized that a mere subjective expectancy on the part of an employee that he will not be discharged except for cause will not create a legitimate claim to continued employment.

Here, the trial court found that no written or oral statements made by the agents of BCBSM gave rise to a legitimate expectation of an employment contract providing for discharge only for cause.

Although based on the evidence presented at trial it may have been possible for the trial court to conclude that termination would only be made for just cause, we cannot say that the court's conclusion to the contrary was clearly erroneous. While plaintiff can point to some policy statements that inferentially suggest that there might be a right to discharge only for cause, there was also evidence of an explicit statement in the employee handbook that stated BCBSM "reserves the right to release an employee at any time for any reason." Given the nature of the evidence presented, we choose to defer to the findings of the trial court that defendant did not breach an implied employment contract to discharge the plaintiff only for cause.

Plaintiff next argues that the trial court erred in failing to award him future damages. Future damages or "front pay damages" relate to an award for an employee's loss of future income for a period after the date of trial; for example, until the discharged employee would have reached mandatory retirement age.

In denying plaintiff's claim for such damages in this case, the trial court relied on federal precedent interpreting the federal Age Discrimination and Employment Act (ADEA), 29 USC 621 et seq. Based on these cases, the trial court held that future damages are recoverable under the Civil Rights Act, MCL 37.2101 et seq.; MSA 3.548(101) et seq., only if a plaintiff seeks reinstatement (plaintiff in this case did not) and reinstatement is not a viable remedy. The court looked to the cases under the ADEA because no Michigan cases have discussed the propriety of awarding future damages under the Civil Rights Act. See, Clark v Uniroyal Corp, 119 Mich App 820; 327 NW2d 372 (1982).

We initially note that the language used in the

remedy provisions of § 801(1) of the Elliott-Larsen Civil Rights Act, *supra,* and § 626(b) of the Federal ADEA are somewhat different. Under the Civil Rights Act, a person alleging a violation of the act may bring a civil action "for appropriate injunctive relief or damages, or both." On the other hand, the ADEA is more specific and allows the court to order reinstatement and grant such other legal and equitable relief as may be appropriate. Despite the differences in language, we agree with the trial court that the federal decisions interpreting the ADEA on the issue of future damages should be considered. Thus, we reject the plaintiff's argument that we should rely soley on Michigan common law concerning damages in breach of employment contract cases. As was previously indicated, the trial court's finding in this case that defendant did not breach an employment contract with the plaintiff was not clearly erroneous.

There is presently a split of authority in the federal courts on the issue of whether future damages should be awarded to a successful plaintiff under the ADEA. See Anno., *Award of "Front Pay" Under § 7 of Age Discrimination in Employment Act of 1967,* 74 ALR Fed 745 (1985). Several federal circuit and district courts have held that front pay damages are not available under the ADEA under any circumstances. See, e.g., *Monroe v Penn-Dixie,* 335 F Supp 231 (ND Ga, 1971); *Wehr v Burroughs Co,* 619 F2d 276 (CA 3, 1980); *Kolb v Goldring, Inc,* 694 F2d 869 (CA 1, 1982). These courts have reasoned that future damages are inappropriate because of the ADEA's statutory design, and because such damages are inherently too speculative. *Monroe, supra,* p 235. Thus, it has been held that money damages under the ADEA must be liquidated as of the date of the judgment

and if the employee does not wish injunctive relief, he waives any unliquidated future right to damages.

However, other federal courts have stated that the issue of front pay does not lend itself to a per se rule and therefore have allowed such damages under certain circumstances. See *e.g., EEOC v Prudential Federal Savings & Loan Ass'n,* 741 F2d 1225 (CA 10, 1984), vacated on other grounds 469 US —; 105 S Ct 896; 83 L Ed 2d 913 (1985), on remand 753 F2d 851 (CA 10, 1985); *Whittlesey v Union Carbide Co,* 742 F2d 724 (CA 2, 1984); *Davis v Combustion Engineering Inc,* 742 F2d 916 (CA 6, 1984).

In *Prudential, supra,* for example, the court held that although reinstatement is the preferred remedy under the ADEA and should be ordered whenever appropriate, where reinstatement is not appropriate an award of future damages should be considered. The court commented that if such relief (future damages) were not available, an employer could avoid the purpose of the ADEA by making reinstatement so unattractive and infeasible that the wronged employee would not want to return. However, it has also been indicated that, even in cases where reinstatement is inappropriate, the decision whether to grant future damages is *discretionary* with the trial court considering the circumstances of the individual case. *Davis, supra.*

Although the federal cases are in conflict, we believe that the recent trend is to recognize that future damages should be available as a remedy where appropriate. In deciding whether to award such damages the courts should look to (1) whether reinstatement would be a feasible remedy, (2) the employee's prospects for other employment, and (3) the number of years remaining

before the employee would be faced with mandatory retirement. See 74 ALR Fed 751.

We concede that the issue of future damamges is a very close and somewhat troubling issue. The recognition that front pay damages are available creates the possibility of substantial monetary liability for some employers. Like the federal courts struggling with this issue under the ADEA, we find merit in both sides of the controversy. In determining the availability and amount of future damages each case will present its own set of unique problems given the age of the plaintiff and other circumstances. Ultimately, we believe that given the substantial impact such damages could have, the availability of front pay damages under the Michigan civil rights acts should be addressed by the Legislature.

However, until the Legislature indicates otherwise, we believe that this modern trend should be adopted in deciding the issue of future damages under the Civil Rights Act. Thus, future damages should be considered as a remedy, but ordinarily should not be awarded unless reinstatement is impracticable or impossible. However, a plaintiff need not seek reinstatement as a prerequisite to a claim for future damages where it is clear that reinstatement is not a viable alternative. Further, even when reinstatement is not an appropriate remedy, the trial court should have discretion in deciding, based on circumstances of each case, whether to award future damages. The fact that such damages may be speculative should not exonerate a wrongdoer from liability.

In this case, we are somewhat troubled by the trial court's apparent application of a per se rule barring the plaintiff from recovering future damages solely because he did not seek reinstatement. However, a closer reading of the lower court rul-

ing indicates that the court did exercise its discretion in deciding not to award front pay. It is not clear from the record whether reinstatement was in fact impossible or impractical. The court recognized that remedies other than reinstatement would have to be explored in certain situations. Therefore, we find that the trial court did not abuse its discretion in refusing to award future damages.

Plaintiff also argues that the trial court erred in failing to award him damages for mental distress. We again disagree.

The trial court correctly recognized that damages for mental and emotional distress are recoverable under the Civil Rights Act. *Slayton v Michigan Host, Inc,* 122 Mich App 411; 332 NW2d 488 (1983). The court refused to award such damages, finding that "[p]laintiff suffered no damage for emotional or mental distress because there was no medical testimony to support the claim." The court's reason for rejecting plaintiff's claim is ambiguous. To the extent the court meant that medical testimony was required to establish a claim for mental distress, the court clearly erred. See *Birkhill v Todd,* 20 Mich App 356; 174 NW2d 56 (1969). However, even if that is what the trial court meant, we find the error was harmless since our review of the record convinces us that the evidence at trial does not support a claim for such damages. MCR 2.613(A).

We also reject the plaintiff's argument that the trial court erred in failing to award him damages for lost pension benefits. Although the fact that a plaintiff's pension has not yet vested does not necessarily bar a damage award for lost pension benefits, *Leds v Textron,* 600 F2d 1003 (CA 1, 1979), such damages must still be proved with

reasonable certainty. In this case, the trial court determined that damages for the lost pension were too speculative. This finding is supported by the record and therefore we decline to reverse on that basis.

Finally, the plaintiff asserts that the trial court erred in only awarding him a portion of his attorney fees. The attorney fee provision of the Civil Rights Act, MCL 37.2802; MSA 3.548(802), provides:

> A court, in rendering a judgment in an action brought pursuant to this article, *may award all or a portion of the costs of litigation,* including reasonable attorney fees and witness fees, to the complainant in the action if the court determines that the award is appropriate. [Emphasis added.]

It has been recognized that the decision to grant or deny an award of attorney fees under that section is within the sound discretion of the trial court. *King v General Motors Corp,* 136 Mich App 301, 307; 356 NW2d 626 (1984), lv den 422 Mich 871 (1985). In this case, the trial court considered the factors set forth in *Wood v Detroit Automobile Inter-Ins Exchange,* 413 Mich 573, 588; 321 NW2d 653 (1982), for determining the reasonableness of an award of attorney fees, and awarded plaintiff one-half of the amount of his attorney fees. After reviewing the record, we find no abuse of discretion.

In summary, we find that the issue raised by the defendant in this appeal is without merit. We also find that none of the issues raised by the plaintiff on cross-appeal warrant reversal. Therefore, the judgment of the trial court is affirmed.

Affirmed.