MORRIS v CLAWSON TANK COMPANY

Docket No. 183374. Submitted October 15, 1996, at Lansing. Decided January 28, 1997, at 9:15 A.M. Leave to appeal sought.

Matthew Morris brought an action in the Oakland Circuit Court against Clawson Tank Company, seeking enforcement of an employment-related arbitration agreement and damages for violation of the Handicappers' Civil Rights Act, MCL 37.1101 et seq.; MSA 3.550(101) et seq. The trial court, Denise Langford-Morris, J., entered a judgment for the plaintiff, finding that the plaintiff had been discriminated against on the basis of his handicap, loss of vision in one eye, that the plaintiff no longer wanted the arbitration award enforced, and that the plaintiff had reasonably attempted to mitigate his damages and thus was entitled to back pay from the date of the termination of his employment to the time of trial and front pay until he reached age sixty-two, in February 2029. The court awarded the plaintiff $130,439 plus interest, costs, and attorney fees. The defendant appealed.

The Court of Appeals held:

1. The trial court correctly held that the plaintiff established discrimination based on his handicap. The defendant's claimed reason for refusing to return the plaintiff to work, its fear of a future worker's compensation claim if the plaintiff injured his remaining good eye on the job, is neither legitimate nor nondiscriminatory.

2. The trial court's award of back pay from October 1, 1989, instead of February 1990, was clearly erroneous because the plaintiff admitted that he was disabled and collected disability benefits until February 1990. The trial court should have cut off the back pay in August 1990, when the plaintiff took a seasonal landscaping job and stopped seeking other employment. The trial court's finding that the plaintiff had reasonably attempted to mitigate his damages and had no obligation to continue to look for work after he took the seasonal landscaping job in 1990 was clearly erroneous. The defendant proved that comparable employment was available and that the plaintiff did not reasonably attempt to secure such employment. The plaintiff was only entitled to back pay from February 1990 to August 1990. The matter must be remanded for the calculation of those back pay damages.

3. The trial court clearly erred in finding that the defendant's 1992 offer of reinstatement was patently unreasonable and, therefore, the plaintiff did not have to mitigate his damages by accepting it. The plaintiff's rejection of the offer was unreasonable, and therefore, he is not entitled to any front pay award.

4. The award of front pay for the period after February 1993, when the plaintiff obtained like employment, was clearly erroneous because the plaintiff incurred no damages after that time.

5. The trial court erred in awarding a flat interest rate of 8.535 percent on the damages award. The matter must be remanded to allow the court to apply the interest rate provided in MCL 600.6013(6); MSA 27A.6013(6) to the back pay award.

6. The defendant's argument regarding the award of attorney fees is not properly before the Court of Appeals.

Vacated and remanded.

1. CIVIL RIGHTS — DISCRIMINATORY DISCHARGE FROM EMPLOYMENT — REFUSAL TO REEMPLOY HANDICAPPED WORKER.

An employer's fear of future worker's compensation claims that could result if an employee injures the remaining eye in which the employee has sight is not a legitimate, nondiscriminatory reason for refusing to return the employee to work after the employee has been off work as a result of losing sight in the other eye in an accident.

2. CIVIL RIGHTS — DISCRIMINATORY DISCHARGE FROM EMPLOYMENT — MITIGATION OF DAMAGES.

The plaintiff has the obligation to attempt to mitigate damages in every case involving discriminatory discharge from employment; the plaintiff can mitigate damages by seeking and accepting, if offered, employment that is of a like nature, i.e., similar in type, hours, wages, tenure, and working conditions, or by accepting reinstatement of employment if it is offered.

3. CIVIL RIGHTS — DISCRIMINATORY DISCHARGE FROM EMPLOYMENT — MITIGATION OF DAMAGES.

A plaintiff alleging discriminatory discharge from employment must make a reasonable, good-faith effort to secure like employment in order to mitigate damages; the defendant has the burden of proving that the plaintiff did not make an honest, good-faith effort and may satisfy that burden by establishing that substantially equivalent positions were available and that the plaintiff failed to use reasonable care and diligence in seeking such positions.

4. CIVIL RIGHTS — DISCRIMINATORY DISCHARGE FROM EMPLOYMENT — OFFERS OF REINSTATEMENT — MITIGATION OF DAMAGES.

A reasonable offer of reinstatement to employment must be accepted or the right to an award of front pay damages for discriminatory discharge from employment is forfeited; the employer's offer of the previous job is an unconditional offer, the rejection of which may constitute a failure to mitigate damages, whereas an offer of a different job is considered conditional, the rejection of which does not constitute a failure to mitigate damages where the rejection is reasonable under the circumstances.

*Otis M. Underwood, Jr.*, for the plaintiff.

*Karl Reibel*, for the defendant.

Before: TAYLOR, P.J., and CORRIGAN and D. A. JOHNSTON, III*, JJ.

TAYLOR, P.J. Defendant appeals as of right from a judgment entered after a bench trial for plaintiff in the amount of $130,439 plus interest, costs, and attorney fees. We vacate and remand for a recalculation of plaintiff's damages.

Plaintiff, who was twenty-one years old and had a tenth-grade education, began employment with defendant as an unskilled laborer in November 1988. After a short training period, he was assigned to defendant's total containment division, where he was required to place reinforcing plastic onto large underground storage tanks. In August 1989, plaintiff was assaulted in a nonemployment-related confrontation and lost his left eye. One month later, he attempted to return to his job and was informed by the production manager that there was no work for him to do. Plaintiff had been earning $7.42 an hour plus benefits. After his job was terminated, plaintiff worked a seasonal landscaping job for $5 an hour in 1990, 1991, and 1992, as well as some other odd, temporary jobs.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

He secured a full-time janitorial job in February 1993 with an education institution, earning $7.46 an hour plus benefits.

On October 12, 1989, plaintiff filed a union grievance alleging that defendant could have placed him in another position. Notably, plaintiff did not request to be returned to the total containment division in his grievance. The grievance was submitted to arbitration and the Tri-City Industrial Board rendered a decision in January 1990, ordering that defendant make a reasonable effort to accommodate plaintiff in the plant without displacing any employees of greater seniority. No back pay was awarded. At the trial to enforce the arbitration award, defendant contended that it could not place plaintiff after the board's decision without displacing a senior employee. In fact, in late 1990 or early 1991, the plant shut down the entire total containment division. Defendant's work force at that time went from 115 employees to 77, and by the time of trial there were only 50 employees. In 1992, during the pendency of plaintiff's lawsuit for enforcement of the arbitration award and for damages under the Michigan Handicappers' Civil Rights Act, MCL 37.1101 et seq.; MSA 3.550(101) et seq., however, the plant began a new fiberglass operation and recalled plaintiff to work as an unskilled laborer. Plaintiff ignored the recall notice.

Defendant's witnesses testified that plaintiff was not returned to his position in the total containment division because of his lost eyesight. They testified that plaintiff would have constituted an unreasonable risk to himself and others. There was also testimony that thirty-eight percent of all injuries in defendant's plant were eye injuries and the risk of harm to plain-

tiff's remaining eye was high. Defendant candidly admitted that it was afraid that if plaintiff suffered a work-related injury to his right eye, defendant would incur financial liability. There was no evidence, however, that plaintiff could not have performed his job with one eye. Plaintiff testified that he could have continued to work in his old position and his coworkers testified that he was not a greater risk because of the loss of his sight in one eye.

The trial court entered judgment for plaintiff, finding that he had been discriminated against on the basis of his handicap, that he no longer wanted the arbitration award enforced, and that he had reasonably attempted to mitigate his damages and thus was entitled to back pay from the date of the termination of his employment to the time of trial and front pay until he reached age sixty-two, in February 2029.

Defendant appeals the trial court's judgment, disputing several findings made by the court. We review the trial court's findings of fact in a bench trial under the clearly erroneous standard. *Hofmann v Auto Club Ins Ass'n*, 211 Mich App 55, 98; 535 NW2d 529 (1995). In reviewing a verdict after a bench trial, we sift the evidence through a sieve of finer mesh than the one we correspondingly employ in reviewing a jury's verdict. *Schneider v Pomerville*, 348 Mich 49, 54-55; 81 NW2d 405 (1957).

I

First, defendant argues that it was not liable for any damages under the handicappers' act because it offered a legitimate reason for refusing to return plaintiff to work. There is no dispute that plaintiff offered a prima facie case because he was handi-

capped and the handicap was unrelated to his ability to perform his job. Because plaintiff offered a prima facie case, the burden shifted to defendant to articulate a legitimate, nondiscriminatory reason for its action. *Crittenden v Chrysler Corp*, 178 Mich App 324, 331; 443 NW2d 412 (1989). Defendant claimed as its legitimate, nondiscriminatory reason that it was fearful of a future worker's compensation claim if plaintiff injured his remaining good eye on the job. The trial court correctly held that this reason is neither legitimate nor nondiscriminatory.

The legislative intent in enacting the handicappers' act was to mandate the employment of the handicapped to the fullest extent reasonably possible. *Id.* If every employer or potential employer could legitimately fire or refuse to hire simply on the basis that it was fearful that a handicapped employee might injure himself, leading to liability for worker's compensation claims, the purpose of the act would be undermined. Handicapped employees would not be protected by the act and employment of the handicapped to the fullest extent reasonably possible would be unattainable. The Legislature clearly did not intend such a result. Moreover, our courts have never sanctioned fear of future claims as a legitimate, nondiscriminatory reason. Contrary to defendant's position, neither *Wilson v Acacia Park Cemetery Ass'n*, 162 Mich App 638; 413 NW2d 79 (1987), nor *Ashworth v Jefferson Screw Products, Inc*, 176 Mich App 737; 440 NW2d 101 (1989), stands for the proposition that an employer is insulated from the handicappers' act if it fires an employee on the basis that the employee may eventually injure himself, causing a rise in insurance rates or the bringing of a claim. Because defend-

ant failed to offer a legitimate, nondiscriminatory reason for its actions, the trial court correctly held that plaintiff had established discrimination based on his handicap.

II

Next, defendant argues that the trial court's award of back pay and front pay damages from October 1, 1989, to February 6, 2029, was clearly erroneous because the arbitration award did not entitle plaintiff to back pay and plaintiff failed to mitigate his damages.[1] We agree that plaintiff was not entitled to back pay for the entire period before trial and was not entitled to any front pay until he found comparable employment in February 1993, because he did not reasonably mitigate his damages. Plaintiff also was not entitled to front pay for the period after February 1993, because he incurred no damages after that time.

In every case involving discriminatory discharge, the plaintiff has the obligation to attempt to mitigate damages. *Riethmiller v Blue Cross & Blue Shield of Michigan*, 151 Mich App 188; 390 NW2d 227 (1986); SJI2d 105.41. There are two ways a plaintiff can mitigate damages. He can seek and accept, if offered, employment that is of "like nature." *Id.* Or, he can accept reinstatement of employment if it is offered. *Rasheed v Chrysler Corp*, 445 Mich 109, 120; 517 NW2d 19 (1994). In some instances, a plaintiff is obligated to accept an offer of reinstatement or his damages are cut off. *Id.*

---

[1] On appeal, plaintiff provides no argument with regard to the effect of the arbitration decision on the trial court's award of back pay. We therefore decline to address that issue.

Employment that is of "like nature" is work that is similar in type, hours, wages, tenure, and working conditions. *Higgins v Kenneth R Lawrence, DPM, PC*, 107 Mich App 178, 181; 309 NW2d 194 (1981). In order to mitigate damages, a plaintiff must make a reasonable, good-faith effort to secure "like" employment. *Dep't of Civil Rights v Horizon Tube Fabricating, Inc*, 148 Mich App 633, 639; 385 NW2d 685 (1986). The defendant has the burden of proving that the plaintiff did not make an honest, good-faith effort. *Id.; Riethmiller, supra* at 194. The defendant satisfies its burden if it "establishes that substantially equivalent positions were available and that the plaintiff failed to use reasonable care and diligence in seeking such positions." *Id.* Here, the undisputed evidence was that there were thousands of entry-level jobs of "like nature" in Genesee and contiguous counties after plaintiff's employment was terminated. Plaintiff's own expert conceded that it was possible for plaintiff to obtain comparable employment. The evidence also showed that one of defendant's experts had located nineteen companies who were offering "like employment" and who were willing to accept plaintiff's application. Plaintiff, however, refused to apply for those jobs. In addition, the evidence showed that plaintiff's own efforts to secure similar employment were not reasonable.

Because plaintiff admitted that he was disabled and collected disability benefits until February 1990, the trial court's award of back pay from October 1, 1989, as opposed to February 1990, was clearly erroneous. Indeed, the act of discrimination did not occur until after plaintiff was no longer disabled. Plaintiff testified that between February 1990 and August 1990, he

applied at numerous places but could not identify the names of those businesses or the types of employment sought. For the entire period, he only recalled applying to gas stations and landscaping companies, which he conceded were not comparable positions, and to one industrial company. The trial court's finding that plaintiff was entitled to back pay during that period was not clearly erroneous because the trial court found credible plaintiff's claim that he was also looking for comparable employment. MCR 2.613(C).

However, the trial court should have cut off back pay in August 1990, when plaintiff took a seasonal job paying $5 an hour at a landscaping company *and* admittedly stopped seeking other employment. Plaintiff apparently did look for some work in the off-season from landscaping, because the evidence showed that he took a temporary job in the 1991 off-season. However, even the trial court acknowledged that plaintiff basically stopped looking for work after August 1990.[2] In February 1993, attorneys for the parties entered into a stipulation that plaintiff had sought no further employment at all after beginning the landscaping season in the spring of 1992. Plaintiff admitted that from February 1990 to the spring of 1992, he only applied at approximately fifty businesses, most of which did not offer similar employment. In February 1993, the educational institution where plaintiff had performed some temporary work in 1991 rehired him on a permanent basis in a janitorial position with

---

[2] The trial court held that once plaintiff accepted the landscaping job, he had no obligation to look for "like" employment. In making this statement, the trial court implicitly acknowledged that plaintiff had virtually stopped seeking employment but that he was entitled to do so. There is no authority for such a proposition.

a starting salary comparable to what he was making at the time his employment with defendant ended.

After thoroughly reviewing the record, we hold that the trial court's finding that plaintiff had reasonably attempted to mitigate his damages and had no obligation to continue to look for employment after he took the seasonal landscaping job in 1990 was clearly erroneous. Defendant proved that comparable employment was available and that plaintiff did not reasonably attempt to secure such employment. Applying for approximately fifty jobs (less than one job application every two weeks), most of which were noncomparable, in two years is unreasonable where entry-level, unskilled-labor jobs were available in the community. See, e.g., *Sellers v Delgado College*, 902 F2d 1189, 1194-1195 (CA 5, 1990). Plaintiff was only entitled to back pay from February 1990 to August 1990, when he virtually stopped looking for other employment and stayed with his seasonal employer.

The trial court also found that defendant's 1992 offer of reinstatement was patently unreasonable and, therefore, plaintiff did not have to mitigate his damages by accepting it. This finding was also clearly erroneous. A reasonable offer of reinstatement must be accepted or the right to front pay is forfeited. *Rasheed, supra* at 120, 132. In this case, when plaintiff was offered reinstatement, he was informed that his acceptance of reinstatement would not be in exchange for giving up his lawsuit. Plaintiff completely ignored the offer of reinstatement, never called to inquire about the nature of the work being offered, and never reported to work. Defendant testified that it was offering plaintiff a newly created unskilled-labor position. Because the offer of rein-

statement was for a different position, it was conditional. See *Rasheed, supra* at 129 (In the case of a discharge, an employer's offer of the previous job is considered an unconditional offer whereas an offer of a different job is considered conditional. The rejection of an unconditional offer constitutes the failure to mitigate damages, but the rejection of a conditional offer is not if the rejection is reasonable under the circumstances.). Plaintiff's rejection of the offer could not have been based on the different conditions or circumstances of the offered employment because he never inquired about and did not know what the position was or how it may have differed from his old job. Therefore, his rejection was unreasonable. *Rasheed, supra* at 129-130. Plaintiff simply chose to continue the landscaping job when the offer was made.

The trial court apparently found that the offer was patently unreasonable because it was made more than two years after the termination of plaintiff's employment. Timing alone, however, does not make an offer of reinstatement unreasonable, cf. *Paulitch v Detroit Edison, Co*, 208 Mich App 656, 660-661; 528 NW2d 200 (1995), lv gtd 451 Mich 899 (1996), lv den 453 Mich 967 (1996), especially in this case where plaintiff had not already accepted employment of "like nature" at the time the reinstatement was offered. The trial court's decision with regard to the offer of reinstatement was clearly erroneous because it failed to examine the circumstances of the offer and plaintiff's employment situation at the time and because plaintiff offered no explanation for ignoring the offer. See *Rasheed, supra* at 129-130, 132. Plaintiff's rejection was made without any knowledge of the conditions of reinstatement.

As was previously noted, front pay is forfeited if plaintiff acted unreasonably in failing to accept reinstatement. In *Rasheed, supra* at 132, the Court stated:

> The failure of a claimant to provide a legitimate basis for a rejection forfeits the right to front pay for the reason that a rejection unrelated to conditions of employment under the reinstatement offer would be based on personal choice and would therefore be unprotected by discrimination laws.

Because plaintiff's rejection was unreasonable, he was not entitled to any front pay. Plaintiff is entitled to back pay only from the date his disability ended, February 1990, to the date he took the landscaping job and ceased looking for employment of "like nature," in August 1990. On remand, the trial court should calculate back pay damages for that time only, using the evidence presented with respect to what plaintiff's salary and benefits with defendant would have been at that time.

Finally, independent of plaintiff's failure to mitigate his damages, the trial court's award of front pay for the period after February 1993, when plaintiff obtained like employment, was clearly erroneous because plaintiff incurred no damages after that time.

III

Next, defendant argues that the trial court erred in ordering interest on the entire damage award. Defendant claims that interest cannot be awarded on future damages. Because we reverse the award of front pay, this issue is moot. However, defendant correctly notes that the trial court awarded an improper amount of interest on the award. Plaintiff concedes that the trial court erred in this regard. The trial court ordered a flat interest rate of 8.535 percent "from the

time of filing Plaintiff's complaint until monies owing are fully paid and satisfied." MCL 600.6013(6); MSA 27A.6013(6) states in pertinent part:

> [F]or complaints filed on or after January 1, 1987, interest on a money judgment recovered in a civil action shall be calculated at 6-month intervals from the date of filing the complaint at a rate of interest that is equal to 1% plus the average interest rate paid at auctions of 5-year United States treasury notes during the 6 months immediately preceding July 1 and January 1, as certified by the state treasury, and compounded annually, pursuant to this section.

On remand, the trial court must apply the statutory interest rate on the back pay award instead of a flat interest rate.

IV

Finally, defendant argues that the trial court's order awarding attorney fees was improper. This issue is not properly before this Court. An order awarding attorney fees but deferring a hearing regarding the amount of those fees was entered after the claim of appeal from the judgment was taken. No claim of appeal was subsequently taken from the order of attorney fees. An appeal of right is taken after an order is entered, not before. MCR 7.204(A)(1)(a). Moreover, even if the issue were properly before us, the record is devoid of any information regarding whether the trial court ever held a hearing and entered an order setting out the amount of attorney fees to be awarded. Therefore, we cannot review the award of fees.

Vacated and remanded for recalculation of plaintiff's damages. We do not retain jurisdiction.