EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,

v.

HARPER GRACE HOSPITALS, Defendant.

No. 86–CV–73997–DT.

United States District Court, E.D. Michigan, S.D.

April 25, 1988.

Stanley Pitts, Detroit, Mich., David Ingram, Lansing, Mich., for plaintiff.

William Albertson, Douglass Witters, Birmingham, Mich., for defendant.

## OPINION

HACKETT, District Judge.

This action was instituted on September 22, 1986, by the United States Equal Em-

ployment Opportunity Commission (Commission), pursuant to Section 703(a)(1) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e, *et seq.* (1972), as the result of defendant Harper Grace Hospital's (Harper Grace) alleged unlawful employment practice of paying the female aides less per hour than the male housekeepers when both performed equal work on jobs the performance of which required substantially equal skills, effort and responsibility and which were performed under similar working conditions. (Sex-based wage discrimination.) The scope of the Commission's lawsuit against Harper Grace, in terms of relief, includes all female aide I's employed between January 1, 1978, and June 28, 1982.

The Commission is an agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. Section 2000e—5(f)(1) and (3). Harper Grace has been during all relevant times a corporation doing business in the State of Michigan and the City of Detroit, where it is engaged in the health care business. Harper Grace employs more than fifteen (15) employees. As such, Harper Grace is an employer engaged in an industry affecting commerce within the meaning of Section 701(b), (g) and (h).

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e, *et seq.* (1972), governs this action, and this court has jurisdiction over the parties and the subject matter. Venue is properly laid in this district.

The court states for the record at this time that it surprisingly found all witnesses credible. This is a classic situation of one case on paper and another in fact.

## FINDINGS OF FACT

1. Between January 1, 1978 and June 28, 1982, the defendant paid persons in the "housekeeper" classification eleven (11¢) cents more per hour than persons in the "aide I" classification.

Harper Grace does not contend that the differential in pay between aides and housekeepers is based upon a seniority system, merit system, or a quantity or quality of production scale. From July, 1976 to June 28, 1982, Harper Grace did not perform or cause to be done any job analysis, job evaluation or studies to determine the comparative effort, skill and responsibility associated with the performance of the aide and housekeeper jobs.

2. On July 16, 1968, Catherine Carmichael was hired as a maid by Grace Hospital.

3. On September 14, 1968, Luevonia Bramlette was hired as a maid by Grace Hospital.

4. The merger of Harper and Grace Hospitals had occurred in 1974.

5. After the merger of Harper and Grace Hospitals, both Carmichael and Bramlette continued their employment with Harper Grace as aide I's.

6. On January 2, 1980, both Carmichael and Bramlette filed a timely charge of discrimination with the Commission against Harper Grace.

7. On or about June 15, 1984, the Commission's investigation of the charges filed by Carmichael and Bramlette resulted in findings by it of reasonable cause to believe that violations of Title VII and the Equal Pay Act were committed by Harper Grace.

8. On April 30, 1985, the Commission notified Harper Grace that conciliation efforts had failed.

9. Between January, 1978, and June 28, 1982, the housekeeping unit of the Environmental Services Department at Harper Grace included the job classifications of aide I and housekeeper.

10. In 1978, the number of housekeepers and aides totaled 116 housekeepers and 232 aides (348 individuals). All housekeepers were male (100%) and (92%) of the aides were female.

11. In 1979, the number of housekeepers and aides totaled 95 housekeepers and 191 aides (286 individuals). All housekeep-

ers were male (100%) and (98%) of the aides were female.

12. In 1980, the number of housekeepers and aides totaled 117 housekeepers and 221 aides (338 individuals). All housekeepers were male (100%) and (98%) of the aides were female.

13. In 1981, the number of housekeepers and aides totaled 65 housekeepers and 203 aides (268 individuals). All housekeepers were male (100%) and (95%) of the aides were female.

14. Mary Bullock, formerly an aide, became the first female housekeeper on a full-time basis in 1981.

15. The regular work schedule for both aides and housekeepers consisted of forty (40) hours per work week and eight (8) hours per day.

16. Harper Grace did not maintain job descriptions for the positions of aide and housekeeper between January, 1978, and November, 1980.

17. In 1980 the job descriptions for the positions of aide and housekeeper were drafted by the Harper Grace Wage and Salary Department in conjunction with the Environmental Services Department.

18. In November, 1980, the Harper Grace Human Resources Department approved job descriptions for both the housekeeper and aide positions. This department was responsible for the hiring of persons into the aide and housekeeper positions.

19. The skills and abilities required for both the housekeeper and aide jobs included: (a) physical ability to stand, walk, stoop, push, pull, lift and carry equipment; (b) ability to operate and perform routine maintenance on housekeeping equipment; (c) ability to perform simple standardized routine tasks.

20. The working conditions of both housekeepers and aides included: normal hospital environment, constant physical activity, normal exposure to chemicals, electrical equipment, wet floors, etc.

21. The minimum level of preparation and training for the jobs of housekeeper and aide were the same and included the ability to read, write, speak English and to follow written or oral instructions. A one-week break-in time was provided.

22. The principal duties and responsibilities of a *housekeeper* as set forth in the written job description included the following:

a) Performs all hard floor maintenance functions such as: dust mop, wet mop, strip, scrub, and refinish floors; vacuum and/or shampoo rugs and upholstered furniture, etc.

b) Operates related, required housekeeping equipment such as: buffers, floor scrubbers, large vacuum cleaners, etc.

c) Performs a variety of general housekeeping duties as required such as:

i) Dust furniture, fixtures, furnishings and equipment, etc.

ii) Cleans and polishes as needed ledges, sills, partitions and spot cleans walls.

iii) Cleans and scours lavatories and replenish related supplies including dispensable items.

iv) Empties and cleans ashtrays, wastebaskets and trash receptacles, and collects, transports, and disposes of trash.

v) Clean cubicle tracks and rods; hang draperies and cubicle curtains.

vi) Clean elevator cars and door tracks.

vii) Transport carts, beds, mattresses and furniture.

viii) Cleans and makes beds after patient discharge.

ix) May be required to wash ceilings as needed and wash light fixtures, ceiling tile, windows, etc.

x) Performs other related duties as assigned.

(Plaintiff Trial Exhibit # 12)

23. The principal duties and responsibilities of an *aide I* as set forth in the written job description include the following:

Performs related general housekeeping/cleaning procedures in patient and/or office areas such as:

a) Dust furniture, fixtures, furnishings and equipment, etc.

b) Maintain floors by dust mopping, wet mopping, vacuuming, spot cleaning carpets utilizing related housekeeping equipment as necessary.

c) Cleans and polishes as needed doors, ledges, sill, partitions and spot clean walls.

d) Cleans and makes beds after patient discharge.

e) Cleans and scours lavatories and replenishes related lavatory supplies including dispensable items.

f) Empties and cleans ashtrays or urns, wastebaskets, trash recepticles and collects, transports and disposes of refuse.

g) Cleans elevator cars and door tracks.

h) Hangs draperies and cubicle curtains; cleans cubicle tracks and rods.

i) Performs other related duties as assigned.

(Plaintiff Trial Exhibit #5)

24. It is unrefuted that all housekeepers could not and did not perform all the duties included in their job description, particularly the operation of large scrubbers and moving of heavy equipment.

25. No housekeepers cleaned or made beds after patient discharge nor cleaned patient rooms or lavatories.

26. An aide assigned to clean in a patient area was responsible to clean 12 patient rooms per 8-hour shift.

27. Moving of heavy furniture and equipment was done by a crew of two housekeepers assigned to do this specific task exclusively. They were eventually reclassified as "movers".

28. Most furniture in patients' rooms rolled on casters and was moved by the aides as needed to do their work. Aides flipped and washed mattresses.

29. Some housekeepers (not movers) assisted in moving equipment, office supplies and office furniture, but no more than eight times a year.

30. During an eight-hour shift housekeepers normally completed their assigned work within four to five hours.

31. Aides assisted housekeepers when hanging draperies and cubicle curtains.

32. The job duties of an aide required:

a) more patient contact on a daily basis than the housekeepers' duties.

b) lifting, carrying or dragging of bags of trash weighing as much as twenty pounds, on a daily basis.

c) from three to on occasion seven patient "checkouts" as part of the routine cleaning of twelve patient rooms per day. The "checkout" cleaning of a discharged patient's room required thorough cleaning, scrubbing and sanitizing before another patient could be placed in the room.

33. Aides have difficulty completing all their assignments before the end of their shift.

34. The aides and housekeepers came into frequent daily contact with one another in the performance of their job duties.

35. Window drapes were removed by both housekeepers and aides. Normally drapes were removed once or twice a year for cleaning.

36. Both housekeepers and aides used ladders to clean walls.

37. Some aides did use the power floor cleaning equipment in performing their cleaning duties.

38. Aides, unlike the housekeepers, were not formally trained to operate the power floor cleaning equipment.

39. Aides daily used a vaccart in the performance of their duties. This vaccart, when loaded with required cleaning supplies, a vacuum, linen, and full trash bags was heavy and difficult to maneuver over carpeted floors.

40. The vaccart at times required as much or more effort to push than it took to operate the power floor cleaning equipment used by housekeepers to clean floors and carpeted areas.

41. Aides were required to push a vaccart throughout the course of their eight-hour shift.

42. Housekeepers would push the power floor cleaning equipment tilted on its back wheels when transporting the equipment to various locations within their assigned cleaning area. No lifting was required. Housekeepers used elevators to transport power floor cleaning equipment from one floor to another.

43. Aides and housekeepers routinely moved patient room furniture in the performance of their duties.

44. Aides assigned to clean twelve patient rooms per day, which included checkouts, would normally work alone.

45. Aides and housekeepers were assigned to work in same building areas.

46. Some aides washed walls, hauled and compacted trash, used ladders, scaffolding and performed high dusting as a regular part of their routine daily duties, as did housekeepers.

47. In support of its defense that the duties of a housekeeper required more physical effort and the assumption of greater responsibility than the duties of an aide, Harper Grace relies on sporadic observation of aides and housekeepers by management while they were performing their various job assignments.

48. Supervision received by aides is substantially similar to supervision received by housekeepers. Both job classifications require employees to report to a supervisor.

49. In 1979, a female aide attempted to apply for an open housekeeper position but was advised that the housekeeper position was "a man's job" and that an aide did not have the necessary qualifications to do the housekeeper job.

50. From January, 1978, to the date charges of discrimination were filed by Carmichael and Bramlette on January 2, 1980, there were no females employed in the housekeeper position.

51. Mary Bullock, a female employee hired in 1979 as an aide, became the first female to be classified as a housekeeper in 1981. She is 5'7" tall and weighs about 140 pounds. She stated unequivocally that the housekeeper job was "easier by far." Male witnesses agreed with her assessment of the jobs. She stated the heavy equipment was not difficult to learn to use and that the vaccarts were "just too heavy." She has worked throughout the hospital facility. She also heard supervisors refer to housekeeper as "a man's job."

52. On June 28, 1982, Harper Grace negotiated the hourly pay rate of aides to equal the hourly pay rate of housekeepers. These employees were then classified "housekeeping aides."

53. The male worker witnesses all agreed that the women worked as hard or harder than they did.

54. William Bell, supervisor and manager of maintenance at Harper Grace testified males "were preferred" to operate the larger pieces of power equipment without explaining the basis for the preference, e.g. could a sturdy woman operate this equipment? He scheduled housekeeper duties as needed, contrary to aide work which was a daily assignment. He admitted he did not know who actually operated what equipment and for what periods of time.

In summary, although on paper, and possibly as intended by Harper Grace, the jobs of aide and housekeeper were not to be substantially equal in terms of skill, effort and responsibility, in fact, as required to be performed by all involved, they were. The testimony in this case clearly establishes by a preponderance of the evidence that the jobs of aide and housekeeper were distinctions without real differences. Working conditions were the same. The Commission has met its burden of proof.

## CONCLUSIONS OF LAW

The analysis of a claim of unequal pay for equal work is essentially the same under both the Equal Pay Act and Title VII. *Odomes v. Nucare, Inc.*, 653 F.2d 246 (6th Cir.1981). The Commission may establish a claim of unequal pay for equal work, under Title VII, by proving that Harper Grace "pays different wages to employees of opposite sexes 'for equal work on jobs the

performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions'." *Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974). *See also Odomes,* 653 F.2d at 250.

Congress did not intend through the use of the phrase "equal work" to require that the jobs be identical. *Schultz v. Wheaton Glass Company,* 421 F.2d 259 (3rd Cir. 1970), *cert. denied,* 398 U.S. 905, 90 S.Ct. 1696, 26 L.Ed.2d 64 (1970). Instead, to effectuate the purposes of the Equal Pay Act, only substantial equality of skill, effort, responsibility and working conditions is required. *Id.* at 265. The courts do not allow employers to escape the Act's reach by overly fine distinctions in the tasks at issue. *Brennan v. Prince William Hospital Corp.,* 503 F.2d 282 (4th Cir.1974), *cert. denied,* 420 U.S. 972, 95 S.Ct. 1392, 43 L.Ed.2d 652 (1975). The determination of whether jobs are substantially equal "must be resolved by an overall comparison of the work, not its individual segments." *Odomes,* 653 F.2d at 250 [citing *Gunther v. County of Washington,* 623 F.2d 1303, 1309 (9th Cir.1979), aff'd 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981)].

"The occasional or sporadic performance of an activity which may require extra physical or mental exertion is not alone sufficient to justify a finding of unequal effort...." 29 C.F.R. § 800.128 (1974) and *Usery v. Board of Education of Baltimore County,* 462 F.Supp. 535 (D.Md.1978). Jobs can be substantially equal even though performed with different equipment or machines. *Thompson v. Sawyer,* 678 F.2d 257, 273 (D.C.Cir.1982) and 29 C.F.R. § 800.123 (1980). Job descriptions or titles do not determine whether jobs are substantially equal. The controlling factor under the Equal Pay Act is job content— the actual duties that the respective employees are called upon to perform. *Prince William Hospital Corp.,* 503 F.2d at 288.

"Although job descriptions should not be accorded as much weight as that given to the duties actually performed by employees in determining whether jobs are substantially equal ... they may be helpful, particularly where the description of the jobs to be compared are similar and were written by the very employer who claims that the wage differentials are not based on an impermissible criterion." *Brennan v. Owensboro–Daviess County Hospital,* 523 F.2d 1013, 1017 (6th Cir.1975), *cert. denied* 425 U.S. 973, 96 S.Ct. 2170, 48 L.Ed.2d 796 (1976). Cf. *Corning Glass Works v. Brennan,* 417 U.S. 188, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974).

In the instant case, the job descriptions provided by Harper Grace demonstrate that the two positions were virtually identical. Both performed the same routine duties such as dusting, mopping, vacuuming, spot cleaning carpet and walls, emptying wastebaskets and trash receptacles, cleaning lavatories, hanging draperies and cubicle curtains, cleaning cubicle tracks and rods, cleaning after patient discharge and cleaning elevator cars and door tracks. Both aides and housekeepers, under general supervision, were responsible for maintaining assigned areas of the hospital in a clean, orderly and attractive condition. In addition to the job descriptions, the testimony of the housekeepers demonstrate that the duties of aide and housekeeper were closely related. *Hodgson v. Miller Brewing Co.,* 457 F.2d 221, 227 (7th Cir.1972) (Comparison of jobs requires that duties be "closely related" or "very much alike").

In the present case, where job content is critical the focus inevitably shifts to testimony respecting individual employees. This record supports a finding that the job of an aide requires substantially equal effort to perform as does the job of a housekeeper.

The employee witnesses all testified that it did not require great effort to operate the electrically powered buffer which is a labor-saving device that practically does all the work itself once one learns how to operate it. In addition, it did not require any specialized skill to operate it and one could learn to operate it in less than an hour. Again, not all housekeepers operated it. It required more effort to push the

vaccart than to operate a buffer, shampooer or stripper when properly performing the floor cleaning functions.

Housekeepers, and aides who primarily used the vaccarts, used other small model vacuums as well as the large model vacuums when necessary.

■ Use of the power-driven equipment by some housekeepers required no greater effort than the amount of effort expended by aides in the performance of their duties and is insufficient to justify the wage differential. *See Brennan v. Houston Endowment, Inc.,* 7 E.P.D. ¶ 9204 (S.D.Tex.1974) [available on WESTLAW, 1974 WL 122], aff'd per curiam, 511 F.2d 1190 (5th Cir.1975) and *Hodgson v. San Diego Unified School District,* 6 E.P.D. ¶ 8684 (S.D.Cal.1972) [available on WESTLAW, 1972 WL 263]. Where the evidence indicated that women were physically capable of operating the machines but, pursuant to defendant's policy, were not permitted to use them, the defendant could not justify the pay differential on the basis that the men operated commercial electric scrubbing and polishing machines.

■ Trash collection was the responsibility of specific, designated housekeepers. Not all housekeepers collected trash on a regular basis, although all aides hauled large trash bags to the designated drop off sites. It is well settled that an across-the-board pay differential is not justified where additional duties are not performed by substantially all of the higher paid persons on a regular basis. *Brennan v. Owensboro–Daviess County Hospital,* 523 F.2d at 1028–29. *See also Usery v. Board of Education of Baltimore County,* 462 F.Supp. 535, 568, (D.Md.1978). Trash collection as performed by the housekeeper is insufficient to justify the pay differential.

■ The size of the areas aides and housekeepers were responsible for cleaning were about equal. Furthermore, a difference in "square footage does not make the jobs different." *Marshall v. Central Kansas Med. Cntr.,* 29 FEP Cases 1817, 1821 (D.Kan.1981) [available on WESTLAW, 1981 WL 413].

The housekeepers used scaffolding and ladders to clean light fixtures, ceilings and high parts of walls. Cleaning windows, high dusting and cleaning lights was done only on a monthly basis. Aides also performed most of these tasks.

■ The fact that at times a few housekeepers were involved in the movement of "heavy" furniture does not justify an across-the-board pay differential for housekeepers who did not perform those duties on a regular basis. *Owensboro–Daviess,* 523 F.2d at 1022, 1030, and *Usery v. Board of Education of Baltimore County,* 462 F.Supp. at 567–68. Occasional or incidental tasks performed by the males will not render the jobs unequal. *Usery v. Board of Education of Baltimore County,* 462 F.Supp. at 567–68.

■ Both housekeepers and aides performed various tasks which required reaching, stooping, bending, pushing, lifting, standing and walking. However, the aides worked steadily and were required to work the entire eight (8) hour shift in order to complete their daily assignments. On the other hand, the male housekeepers did not perform steady work and usually completed their assignments in less than eight hours.

In determining whether jobs were equal in terms of skill, effort, responsibility and working conditions the court has given great weight to the testimony of the males in the higher paid job classification. Lay witnesses are allowed to express opinions which are rationally based on the perception of the witness and are helpful to the determination of a fact in issue. FRE 701. Such testimony is admissible even if it embraces an ultimate issue to be decided by the trier of fact. FRE 704. The court has broad discretion to determine whether a lay witness is qualified to testify on a matter of opinion. *Randolph v. Collectramatic, Inc.,* 590 F.2d 844 (10th Cir.1979). Generally, witnesses may testify to facts based upon their own observation and express an opinion based upon such observations. *Teen–Ed, Inc. v. Kimball International, Inc.,* 620 F.2d 399, 403 (3rd Cir.1980).

In this case, housekeepers who had the opportunity to observe the aides on a regular basis testified under oath that the aides worked as hard or harder than the housekeepers. Their testimony is based both on their observation and their actual experience on their own jobs. The probative value of their opinions is buttressed by the fact that the job duties of aides and housekeepers overlapped.

In addition, a former aide turned housekeeper stated that the housekeeper's job required less effort than the aide's job. Since she performed both jobs her opinion testimony has probative value as it is based on her actual experience and a first-hand comparison of the effort expended on each job.

Both classifications worked inside the hospital in patient areas and non-patient areas. The working conditions therefore were the same. The responsibility inherent in each job was substantially similar as both housekeepers and aides were responsible for the general maintenance and upkeep of the hospital interior. Neither classification had subordinates or supervisory authority.

Harper Grace does not contend that the housekeeper duties required greater skill than that required of an aide. In conclusion, the two classifications were substantially equal in skill, effort, responsibility and working conditions.

## CONCLUSION

■ No reason has been advanced on this record which persuades this court that pay differential for aides and housekeepers at Harper Grace was based on anything other than intentional and purposeful discrimination based on sex. The Commission has met its burden and has established that Harper Grace violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.*, by intentionally discriminating against the female aides in their compensation. The loss incurred by the female aides as the result of Harper Grace's violation of Title VII is compensable under Section 706(g) of Title VII of the Civil Rights Act of 1964.

"Once a court has determined that [parties have] sustained economic loss from a discriminatory employment practice, backpay [is] normally awarded unless special circumstances are present." *Pettway v. American Cast Iron Pipe Company*, 494 F.2d 211, 253 (5th Cir.1974). The court finds no special circumstances in this case.

A backpay award should make the claimants whole, that is, place them in the position they would have been in but for discrimination. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418–21, 95 S.Ct. 2362, 2372–73, 45 L.Ed.2d 280 (1975). The amount of backpay is the difference between the salary the plaintiffs would have received but for their discriminatory treatment and the money actually earned during the appropriate backpay period.

Back wages are due to all the female aides employed at both the Harper facility and the Grace facility from January 1, 1978, to June 28, 1982. Back pay is to be computed using the eleven (11¢) cents per hour pay differential. Harper Grace is to make available to the Commission all records necessary to identify persons to whom backpay may be owing and to compute the particular amounts owing pursuant to this Opinion. Appropriate adjustments to pensions and fringe benefits also is ordered.

Prejudgment interest is an appropriate remedy to make the victims of sex discrimination whole and will be assessed in this case against Harper Grace, *EEOC v. Wooster Brush Co. Employees Relief Ass'n*, 727 F.2d 566, 579 (6th Cir.1984).

Further, post-judgment interest incurred in this action will be assessed against the defendant. *EEOC v. Domino's Pizza*, 31 E.P.D. ¶ 33,461 (E.D.Mich.1983) [available on WESTLAW, 1983 WL 477]; F.R.C.P. 54(d).

Both postjudgment and prejudgment interest shall be determined as provided in 28 U.S.C.A. § 1961(a) *or* as may be agreed upon by the parties.