## MORRIS v CLAWSON TANK COMPANY

Docket No. 108659. Argued October 8, 1998 (Calendar No. 18). Decided December 28, 1998. Rehearing denied *post*, 1234.

Matthew J. Morris lost an eye in an accident unrelated to his employment as a general laborer with the Clawson Tank Company. Although his physician certified that he was able to return to work a month later, Clawson Tank discharged him. Over the next three and a half years, Morris worked at various full- and part-time jobs. During that time, he also filed a grievance, and an arbitration panel ordered his reinstatement. When Clawson Tank refused to reinstate him, claiming no position was available, Morris brought an action in the Oakland Circuit Court, Denise Langford-Morris, J., seeking enforcement of the arbitration award and asserting a cause of action under the Handicappers' Civil Rights Act, MCL 37.1101 *et seq.*; MSA 3.550(101) *et seq.* He later moved to seek monetary relief only, and the court ruled that reinstatement would no longer be available and declared the ruling to be the law of the case. Clawson Tank subsequently purported to recall the plaintiff to work. Following a bench trial, the court awarded the plaintiff back and front pay. The Court of Appeals, TAYLOR, P.J., and CORRIGAN and D. A. JOHNSTON, JJ., affirmed the trial court's finding of liability, but vacated its decision, and remanded for a substantial reduction of the back-pay award and elimination of the front-pay award. 221 Mich App 280 (1997) (Docket No. 183374). The plaintiff appeals.

In an opinion by Justice BRICKLEY, joined by Chief Justice MALLETT, and Justices CAVANAGH and KELLY, the Supreme Court *held*:

The Court of Appeals utilized a legally erroneous standard in determining whether the plaintiff had properly mitigated damages. It also failed to properly observe the clearly erroneous standard in reviewing the factual findings of the trial court. When evaluated in light of the proper legal standards, the trial court's findings were not clearly erroneous, mandating reversal of the judgment of the Court of Appeals. The circuit court did not specifically determine, however, whether the defendant met its burden of showing that the plaintiff unreasonably rejected its conditional offer of employment. Remand is required to determine whether the defendant met this burden and, therefore, whether an award of front pay is appropriate.

1. In the context of a breach of an employment contract, wrong-
ful discharge, or discriminatory firing, mitigation of damages obli-
gates the victim of the wrongdoing to make reasonable efforts to
find employment after discharge. A back-pay award of a plaintiff
who succeeds at trial is then reduced by the amount earned in miti-
gation. While a plaintiff may not purposefully remain unemployed
or underemployed in order to maximize recoverable damages in
the form of lost wages, it would be inappropriate to require him to
make all efforts to eliminate the economic damages resulting from
the wrongdoing. Rather, he is required only to make efforts to find
employment that are reasonable under the circumstances.

2. The mitigation rule also obliges the plaintiff to accept, if
offered, employment that is substantially similar to that from which
the plaintiff was fired. If offered employment of a like nature is
rejected, the plaintiff forfeits continuing back and front pay. The
defendant bears the burden of proving that the plaintiff failed to
make reasonable efforts to mitigate damages.

3. The Court of Appeals applied an erroneous rule of law in
holding that the evidence showed that plaintiff's own efforts to
secure similar employment were not reasonable. It collapsed the
two aspects of the doctrine of mitigation into one test: In order to
mitigate damages, a plaintiff must make a reasonable, good-faith
effort to secure "like employment," defining like employment as
work similar in type, hours, wages, tenure, and working conditions.
There is no reason to require a plaintiff to search for like employ-
ment, as defined by the Court of Appeals, in an effort to mitigate
damages. The sole interest of the defendant, the courts, and the
public, in the type of employment sought by the plaintiff in mitiga-
tion is the interest those parties have in avoiding unnecessary eco-
nomic loss. Thus, while a defendant may object to the reasonable-
ness of the amount of compensation typical of the jobs sought in
mitigation, work conditions and type of work are relevant only to
the job seeker. There is no requirement that the plaintiff find
employment with compensation equivalent to that of the job lost.
The Court of Appeals standard is particularly inappropriate, given
that the Handicapper's Civil Rights Act, like the Civil Rights Act
and title VII of the federal Civil Rights Act, is a remedial act, the pri-
mary goal of which is to end discrimination. The plaintiff was not
required to find a job that was reasonably similar to the one that he
held with the defendant; rather, the relevant question is whether
the plaintiff made reasonable efforts to mitigate damages. The trial
judge properly stated the allocation of the burden of proof, and
found that the defendant failed to meet that burden.

4. The Court of Appeals holding, that after the plaintiff basically stopped looking for work his back-pay award should have been cut off, relies on a misapplication of the principles of the doctrine of mitigation. Determining the reasonableness of a job search is a fact-laden inquiry that relies upon determinations of credibility far more within the competence of the trial court than within the competence of an appellate court. The extent to which a plaintiff continues a job search after finding employment simply is one of many facts to be taken into consideration by the factfinder. A defendant must show that the plaintiff failed to make an honest, good-faith effort to secure employment; showing that more exhaustive efforts could have been made is not sufficient. In this case, the trial court's finding, that the plaintiff made reasonable efforts to mitigate damages, was not clearly erroneous.

5. Where an employer makes an offer of reinstatement to a plaintiff, the court must first determine whether the reinstatement offer is conditional or unconditional. The second step is to assess whether a rejection is reasonable. The first step involves a question of law for the court, while the question of reasonableness is one of fact. The Court of Appeals statement of the law was error, because it implies that acceptance of offered reinstatement is in some way meaningfully different from acceptance of like employment from another employer. The defendant's reinstatement offer was conditional in this case, but the Court of Appeals ignored the dispute between the parties over whether the job offer in fact was legitimate, or, rather, merely a trial tactic. Because the trial court did not document its findings regarding the reasonableness of the rejection, remand to the circuit court is required for a specific finding in that regard.

6. There was no clear error in the trial court's factual findings.

Justice WEAVER, joined by Justice BOYLE, concurring, stated that the doctrine of mitigation requires the victim of wrongdoing to make reasonable efforts to mitigate damages or forfeit the right to back pay. Further, and pursuant to the doctrine of mitigation, where the victim of wrongdoing refuses an offer of like employment, the right to continuing back pay and front pay also is forfeited. Because the trial court's award of back pay after August 1990 was not clearly erroneous, it should be reinstated.

The plaintiff's receipt of disability from September 1989 through February 1990 does not preclude a concurrent award of back pay, although the trial court correctly reduced the back pay award by the amount of disability payments. Remand is necessary, however, to determine whether the plaintiff's rejection of the September and October 1992 job offers was reasonable. If the defendant demon-

strates that the plaintiff's rejection was unreasonable, the plaintiff is entitled to neither back pay nor front pay after October 1992.

It remains unclear whether the trial court correctly applied the doctrine of mitigation to the front pay award. The facts of the case may support a modified award of front pay after plaintiff accepted a substantially similar position in February 1993. While there is an obligation to mitigate future damages, the record does not adequately reflect whether the trial court properly considered the mitigation principles with respect to future damages. It remains to be determined what constitutes future damages. Thus, the case should be remanded not only to determine whether the plaintiff was reasonable in rejecting the defendant's September and October job offers but also to reexamine the issue of front pay.

Reversed and remanded.

Justice TAYLOR took no part in the decision of this case.

*Otis M. Underwood, Jr.*, for the plaintiff-appellant.

*Karl Reibel* for the defendant-appellee.

BRICKLEY, J. We are called upon to determine the scope of the plaintiff's duty to mitigate damages in the context of a discriminatory discharge suit under the Handicappers' Civil Rights Act. MCL 37.1101 *et seq.*; MSA 3.550(101) *et seq.*

I

The plaintiff was employed as a general laborer by the defendant, a manufacturer of underground storage and waste tanks. The plaintiff lost an eye on August 13, 1989, in an incident not related to his work at Clawson Tank. He reported back to Clawson Tank one month later with a note from his physician stating that he was able to return to work. At this point, however, he was discharged by the defendant. With the encouragement and assistance of the defendant, the plaintiff began receiving payments under disability insurance. He continued to receive disability

payments for about five months following his discharge.

The plaintiff began to search for other work almost immediately after he was fired. For six months in 1990, he held a temporary job at Cranbrook School, earning $6 an hour.[1] In August of 1990, he began working for the Barkman Landscaping Company, earning $5 an hour and often working in excess of forty hours a week. This was a seasonal job, so the plaintiff was out of work in the winter, but was rehired by Barkman the next year and in 1992 as a supervisor earning $6 an hour. Between August 1991 and February 1993, the plaintiff made approximately fifty job inquiries to landscape companies, gas stations, and similar employers. During this period, the plaintiff held several short-term, odd jobs in addition to those already described.

In February 1993, the plaintiff began working in a full-time, permanent position at Cranbrook School as a janitor earning $7.46 an hour, along with health care, pension, and other benefits.

During the period following his discharge, the plaintiff was also pursuing legal remedies. The plaintiff filed a grievance, seeking reinstatement at Clawson Tank, and, on January 20, 1990, an arbitration panel ordered that he be reinstated, as long as his rehiring would not displace employees of greater seniority. The defendant claimed that no such position was available, and refused to reinstate the plaintiff.

---

[1] Plaintiff had earned $7.42 an hour, along with health and pension benefits, at Clawson Tank. The plaintiff was a member of the Teamsters Union while employed by the defendant.

The plaintiff then filed a lawsuit, seeking to enforce the arbitration award. On September 11, 1991, the trial court allowed the plaintiff to amend his complaint to assert a cause of action under the Handicappers' Civil Rights Act. On August 17, 1992, the plaintiff stated at a motion hearing that, because of the increasing hostility of the litigation, and the lack of trust between the parties, he would only be seeking monetary relief, and no longer wanted reinstatement at Clawson Tank. Thus, the court ruled that reinstatement was no longer an available remedy, and on October 28, 1992, the circuit judge declared this ruling to be the law of the case. The plaintiff did not amend his complaint to correspond with this ruling.

On September 18, 1992, and on October 23, 1992, the defendant mailed letters to the plaintiff, purportedly recalling him to work. The plaintiff did not respond to these letters, and the parties dispute whether the job offered actually existed and, if so, whether it was actually available to the plaintiff.

A bench trial in the circuit court began in April 1994. The court heard testimony regarding the plaintiff's efforts to find work after his firing, both from the plaintiff and from the defendant's experts. The court also heard testimony from both sides regarding the genuineness of the defendant's September/October 1992 job offer to the plaintiff. The plaintiff's expert presented evidence that the amount of back pay lost by the plaintiff was $46,729, and that the amount of front pay lost by the plaintiff was $76,516. In January 1995, the trial court ruled for the plaintiff, finding that he had fulfilled his duty to mitigate damages and awarded him $130,439.

The Court of Appeals affirmed the trial court's find-
ing of liability, but vacated its decision, remanding
the case for a substantial reduction of the plaintiff's
back-pay award, and elimination of his front-pay
award. 221 Mich App 280; 561 NW2d 469 (1997). In
reaching this conclusion, the Court of Appeals articu-
lated a number of specific holdings.

The panel held that the trial court's award of back
pay for the period between October 1989 and Febru-
ary 1990 was clearly erroneous because the plaintiff
was receiving disability benefits; therefore, "plaintiff
admitted that he was disabled" during this period. 221
Mich App 287. Because the plaintiff was still disabled,
there could not yet have been an "act of discrimina-
tion" by the defendant justifying damages. *Id.*

For the period between February 1990 and August
1990, the Court of Appeals held that the trial court's
award of back pay was not clearly erroneous,
"because the trial court found credible plaintiff's
claim that he was also looking for comparable
employment." *Id.*, p 288, citing MCR 2.613(C).

The Court of Appeals further held that "the trial
court should have cut off back pay in August 1990,
when plaintiff took a seasonal job paying $5 an hour
at a landscaping company *and* admittedly stopped
seeking other employment." *Id.*, p 288 (emphasis in
the original).

The trial court's award of front pay was, according
to the Court of Appeals, clearly erroneous on two
grounds. First, the defendant's September/October
1992 offer of employment to the plaintiff was unrea-
sonably refused by the plaintiff. Such a refusal for-
feits the plaintiff's right to front pay. *Id.*, pp 290-291,
citing *Rasheed v Chrysler Corp*, 445 Mich 109, 132;

517 NW2d 19 (1994). Second, "the trial court's award
of front pay for the period after February 1993, when
plaintiff obtained like employment, was clearly erro-
neous because plaintiff incurred no damages after
that time." *Id.*, p 291.

Plaintiff sought leave to appeal to this Court, and
we granted leave. 457 Mich 853 (1998).[2]

We now reverse the Court of Appeals decision as
set forth below.

II

Mitigation of damages is a legal doctrine that seeks
to minimize the economic harm arising from
wrongdoing.

"Where one person has committed a tort, breach of con-
tract, or other legal wrong against another, it is incumbent
upon the latter to use such means as are reasonable under
the circumstances to avoid or minimize the damages. The
person wronged cannot recover for any item of damage

---

[2] *Morris v Clawson Tank Company*, No. 108659. The issues are
limited to: (1) Did the Court of Appeals err in reversing the trial
court finding that defendant's job with the landscape company was
reasonably similar to the job he held with defendant for purposes
of mitigation of damages? (2) Did the Court of Appeals err in
reversing the trial court's finding that plaintiff reasonably mitigated
damages because plaintiff failed to look for higher paying work
while he had a full-time job with the landscape company? (3) Did
the Court of Appeals err in reversing the trial court's finding that
plaintiff was not disabled as of and after his attempt to return to
work in September, 1989? (4) Did the Court of Appeals err in
reversing the trial court's finding that plaintiff suffered damages
meriting an award of "front pay?" (5) Did the Court of Appeals err
in finding as fact that the position that defendant offered to plain-
tiff in 1992, was a genuine position? (6) Did defendant fail to pre-
serve issues relating to whether the trial court erred in its findings
of fact when it did not file a post-judgment motion for new trial or
judgment notwithstanding the verdict with the trial court?

which could thus have been avoided." [*Shiffer v Gibraltar School Dist Bd of Ed*, 393 Mich 190, 197; 224 NW2d 255 (1974) (quoting McCormick, Damages, § 33, p 127).]

In the context of a breach of an employment contract, wrongful discharge, or discriminatory firing, mitigation of damages obligates the victim of the wrongdoing to make reasonable efforts to find employment after discharge. *Id.* The plaintiff's backpay award, if he succeeds at trial, is then reduced by the amount that he earned in mitigation. See *EEOC v Harper Grace Hospitals*, 689 F Supp 708, 716 (ED Mich, 1988). Such a plaintiff may not purposefully remain unemployed or underemployed in order to maximize recoverable damages in the form of lost wages.

It must be remembered, however, that the plaintiff here was wrongfully discriminated against when he was fired by the defendant. 221 Mich App 284-286. It would be inappropriate to require him to make *all* efforts to eliminate the economic damages resulting from the wrongdoing. Rather, he is only required to make efforts that are reasonable under the circumstances to find employment. *Rasheed, supra,* p 124. A plaintiff who does not make such efforts loses the right to claim full back pay as damages. *Id.* This Court has noted that "a claimant required to make reasonable efforts to mitigate damages is not held to the highest standards of diligence. . . . '[T]he claimant's burden is not onerous, and does not require him to be successful in mitigation.' " *Rasheed, supra,* p 123, quoting *Rasimas v Dep't of Mental Health,* 714

F2d 614, 624 (CA 6, 1983), cert den 466 US 950 (1984).[3]

The mitigation rule also obliges the plaintiff to accept, if offered, employment that is substantially similar to that from which the plaintiff was fired.[4] See *Ford Motor Co v EEOC*, 458 US 219, 231-232; 102 S Ct 3057; 73 L Ed 2d 721 (1982). This aspect of the mitigation rule balances the interest of the plaintiff in not being forced to accept an unacceptable job in order to maintain his right to back pay, against the interests of the defendant and the public in avoiding unnecessary economic loss. As the United States Supreme Court has explained, the mitigation requirement cannot be construed to force a plaintiff to accept employment that he or she finds demeaning, particularly inconvenient, or otherwise unacceptable.

> [T]he unemployed or underemployed claimant need not go into another line of work, accept a demotion, or take a demeaning position, [but] he forfeits his right to backpay if he refuses a job substantially equivalent to the one he was denied. [*Ford Motor Co, supra,* pp 231-232.]

Thus, in order to mitigate damages, the plaintiff must make efforts that are reasonable under the circumstances to minimize the economic harm caused by the wrongdoer; and, if offered employment of a

---

[3] "The approach of state courts on the issue of backpay/continued backpay is in harmony with that utilized by the federal courts." *Rasheed, supra,* p 123.

[4] This aspect of the mitigation rule is often referred to as the "like-employment test," because the defendant has the burden of proving that the job offered and the job from which the plaintiff was fired are "like employment."

"like nature," the plaintiff forfeits further back-pay awards by turning it down.[5]

Significantly, "the question whether an employee was reasonable in not seeking or accepting particular employment is one to be decided by the trier of fact." *Rasheed, supra,* p 124, citing *Riethmiller v Blue Cross & Blue Shield of Michigan,* 151 Mich App 188, 194-195; 390 NW2d 227 (1986). The defendant bears the burden of proving that the plaintiff failed to make reasonable efforts to mitigate damages. *Rasheed, supra,* p 124. If the plaintiff was offered "like employment" and turned it down, the burden of proving this is likewise on the defendant. *Id.*

In light of these principles, we now examine the holdings of the Court of Appeals.

A

As is made evident from this discussion of the doctrine of mitigation of damages, the Court of Appeals applied an erroneous rule of law in holding that "the evidence showed that plaintiff's own efforts to secure similar employment were not reasonable." 221 Mich App 287.

The Court of Appeals erred in collapsing the two aspects of the doctrine of mitigation into one test: "In order to mitigate damages, a plaintiff must make a

---

[5] The standard jury instruction properly states this rule of law:

Whether the plaintiff was reasonable in not seeking or accepting particular employment is a question for you to decide. However, the plaintiff is obligated to accept an offer of employment which is of "a like nature." In determining whether employment is of "a like nature," you may consider, for example, the type of work, the hours worked, the compensation, the job security, working conditions, and other conditions of employment. [SJI2d 105.41.]

reasonable, good-faith effort to secure 'like' employment." *Id.*[6] The Court of Appeals defined "like employment" as "work that is similar in type, hours, wages, tenure, and working conditions." *Id.*

We find no reason to require a plaintiff to search for "like employment," as defined by the Court of Appeals, in an effort to mitigate damages. The sole interest of the defendant, the courts, and the public, in the type of employment sought by the plaintiff in mitigation is the interest those parties have in avoiding unnecessary economic loss. See *Shiffer, supra,* p 197, "The principle of mitigation is a thread permeating the entire jurisprudence . . . it is part of the much broader principle of 'avoidable consequences,'" quoted in *Rasheed, supra,* pp 123-124. Thus, while a defendant may object to the "reasonableness" of the amount of compensation typical of the jobs that the plaintiff seeks in mitigation, the "work conditions" and "type of work," 221 Mich App 287, are relevant only to the job seeker. Furthermore, there is no requirement that the plaintiff find employment with compensation equivalent to that of the job lost.[7]

---

[6] *Dep't of Civil Rights v Horizon Tube Fabricating, Inc,* 148 Mich App 633, 639; 385 NW2d 685 (1986), the case cited by the Court of Appeals for this proposition, states only that "diligence in mitigating damages within the employment discrimination context does not require every effort, but only a reasonable effort and it is a respondent, not a claimant, who has the burden of establishing that the claimant failed to make an honest, good faith effort *to secure employment.*" (Emphasis supplied.) There is no discussion of an obligation to secure "like" employment.

*Riethmiller,* also relied upon by the Court of Appeals, states only that "'[a] wrongfully discharged employee is obligated to mitigate damages by *accepting* employment of a "like nature."'" *Id.,* p 194, quoting *Brewster v Martin Marietta Aluminum Sales, Inc,* 145 Mich App 641, 663; 378 NW2d 558 (1985) (emphasis supplied).

[7] "Amount of compensation" should be understood to include all forms of compensation: subsidized health or life insurance, pension benefits, paid vacation, and other alternatives to monetary compensation. It would also be appropriate to take into account the opportunities for promotion

" '[T]he defendant must show that the course of conduct plaintiff actually followed was so deficient as to constitute an unreasonable failure to seek employment.' " *Dep't of Civil Rights v Horizon Tube Fabricating, Inc*, 148 Mich App 633, 638-639; 385 NW2d 685 (1986), quoting *Thurber v Jack Reilly's Inc*, 521 F Supp 238, 242 (D Mass, 1981); see also *Ford Motor Co, supra*, p 232, ns 14-16 (discussing the extent of plaintiff's duty to seek employment in mitigation in the context of title VII litigation).

As noted in part I, the "like employment" test exists largely for the protection of the plaintiff, shielding him from having to accept an unacceptable job in order to preserve his right to a back-pay award. *Ford Motor Co, supra*, pp 231-232. The Court of Appeals restatement of the mitigation doctrine converts it into a sword for the defendant, heightening, to no legitimate end, the requirements the plaintiff must meet in order to successfully mitigate damages. Such a heightened standard is particularly inappropriate given that the Handicappers' Civil Rights Act, like the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*, and title VII of the federal Civil Rights Act, is a remedial act, the primary goal of which "*is* to end discrimination." *Ford Motor Co, supra*, p 230 (emphasis in the original); see *Rasheed, supra*, pp 118-119.

---

and advancement within a particular job if the plaintiff remained in that job for a protracted period. For example, a factfinder might find it "reasonable" for a plaintiff to remain in a job with a much lower salary than the earlier job, if there is great opportunity for advancement, whereas the factfinder might not find it reasonable for the plaintiff to remain in such a job for a long time, if there is little or no chance for advancement. If the plaintiff does not remain in a job for long, however, the opportunity for advancement has little relevance to the plaintiff's reasonableness in seeking and accepting that job.

The plaintiff was not required to find a job that was "reasonably similar" to the one that he held with the defendant. Rather, the relevant question is whether the plaintiff made "reasonable efforts" to mitigate damages. *Rasheed, supra,* pp 123-124. As noted above, the question whether the plaintiff's efforts were reasonable is one for the trier of fact,[8] and the defendant has the burden of proving that the plaintiff's efforts at mitigation were unreasonable. *Id.*

The trial judge properly stated the allocation of the burden of proof, and found that the "[d]efendant has failed to meet this burden. Plaintiff applied for employment in various areas and was able to obtain employment that was of a 'like nature.' "[9] To the extent that the Court of Appeals found plaintiff's mitigation efforts unreasonable because the plaintiff's jobs at Barkman and Clawson Tank were not of a "like nature," that Court was in error and must be reversed.

B

The Court of Appeals held that because the "plaintiff basically stopped looking for work after August

___

[8] Because the circuit judge sat as the finder of fact in this case, her findings are reviewed under the clearly erroneous standard. "In the application of this principle, regard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." MCR 2.613(C).

[9] It is unclear whether the trial court thought that it was necessary for the plaintiff to find employment of a "like nature," thus committing the same legal error as the Court of Appeals, or whether the trial court was simply characterizing the employment that the plaintiff in fact obtained. In either case, this finding supports the conclusion that the defendant failed to show that the plaintiff's efforts to mitigate were "unreasonable." "Unable to find error," *Flynn v Korneffel,* 451 Mich 186, 191, n 5; 547 NW2d 249 (1996), we uphold the trial court's conclusion that the defendant did not meet its burden of proof.

1990," 221 Mich App 288, his back-pay award should have been "cut off" as of this date. *Id.* This holding relies upon a misapplication of the principles of the doctrine of mitigation discussed above.

The Court of Appeals opined that "even the trial court acknowledged that plaintiff basically stopped looking for work,"[10] *id.*, observing the trial court's finding

> that once plaintiff accepted the landscaping job, he had no obligation to look for "like" employment. In making this statement, the trial court implicitly acknowledged that plaintiff had virtually stopped seeking employment but that he was entitled to do so. There is no authority for such a proposition. [*Id.*, p 288, n 2.]

We reiterate that the plaintiff had no obligation to seek "like employment" as defined by the Court of Appeals. *Rasheed, supra*, p 123; see 221 Mich App 287. The question whether plaintiff's efforts to mitigate damages were reasonable under the circumstances is one for the trier of fact. *Rasheed, supra*, p 124.

---

[10] We note that the evidence before the trial court did not show that the plaintiff stopped looking for work as of August 1990. The Court of Appeals stated that "[p]laintiff apparently did look for some work in the off-season from landscaping, because the evidence showed that he took a temporary job in the 1991 off-season." *Id.*, p 288. The Court of Appeals also noted "that from February 1990 to the spring of 1992, [the plaintiff] only applied at approximately fifty businesses . . . ." *Id.*

The Court of Appeals also stated that "the parties entered into a stipulation that plaintiff had sought no further employment at all after beginning the landscaping season in the spring of 1992." *Id.*, p 288. As we hold below, "the extent to which a plaintiff continues his job search once he has found employment is simply one of many factors" that the finder of fact may consider in determining the reasonableness of the plaintiff's mitigation efforts.

Determining the "reasonableness" of a job search is a fact-laden inquiry requiring thorough evaluation of, for example, the earnestness of a plaintiff's motivation to find work and the circumstances and conditions surrounding his job search, as well as the results of it. The extent to which a plaintiff continues his job search once he has found employment is simply one of many factors in this fact-laden determination of reasonableness. Much of this inquiry depends upon determinations of credibility, which are far more within the competence of the trial court than within the competence of appellate judges reading dry records. See MCR 2.613(C).

In our review of the record in this case, we cannot agree with the Court of Appeals that the trial court's finding, that the plaintiff made reasonable efforts to mitigate damages after August 1990, was clearly erroneous. The plaintiff often worked far in excess of forty hours a week at Barkman Landscaping. He held at least one short-term job while he was laid off from Barkman during the off-season. He also would have been eligible to receive benefits from Barkman in 1993, had he not gone to work at Cranbrook instead. See n 7. As the trial court noted in its opinion, "[a] defendant must show that the plaintiff failed to make an 'honest, good faith effort to secure employment,' showing that more exhaustive efforts could have been made is not sufficient."[11] Quoting *Horizon Tube, supra*, p 639.

_____

[11] Our review of the record indicates that the plaintiff did well in his job search, considering the circumstances under which it was carried out. Notably, the plaintiff had a tenth-grade education and very little job experience. For a time, he had no car or gas money with which to search out employment. These circumstances were properly considered by the trial court in determining the plaintiff's reasonableness. *Shiffer, supra*, p 197

C

The Court of Appeals held that it was unreasonable for the plaintiff to ignore the employer's purported job offer in September and October of 1992 and, thus, that the plaintiff was not entitled to any back or front pay following this refusal.[12] 221 Mich App 289-291.

In *Rasheed*, this Court discussed the duty of a plaintiff in a discriminatory discharge suit to accept an unconditional offer of recall from the defendant. *Id.*, p 130. We determined that, where the employer makes an offer of reinstatement to the plaintiff, the court must first determine whether the reinstatement offer is conditional or unconditional. *Id.*, p 129. "The second step is to assess whether a rejection is reasonable." *Id.* The first part of this test involves a question of law for the court, while "the question of reasonableness is one of fact that must take into account the particular circumstances of each case." *Id.*

In the instant case, the Court of Appeals stated:

> There are two ways a plaintiff can mitigate damages. He can seek and accept, if offered, employment that is of "like nature." [*Riethmiller, supra.*] Or, he can accept reinstate-

---

(" '[I]t is incumbent upon the [plaintiff] to use such means as are reasonable *under the circumstances* to avoid or minimize the damages.' " Quoting McCormick, Damages, § 33, p 127) (emphasis supplied).

[12] Federal and state cases have recognized a trial court's discretion to award front pay as a remedy, particularly where "reinstatement is impracticable or impossible." *Riethmiller, supra*, p 201 (setting forth the standard and recognizing that "the trial court should have discretion in deciding, based on circumstances of each case, whether to award future damages"); *Shore v Federal Express Corp*, 42 F3d 373, 377-378 (CA 6, 1994) (finding that "front pay is 'simply compensation for the post-judgment effects of past discrimination,' " and that "flexibility and wide discretion are especially important when a court's remedies for a Title VII violation include front pay." Quoting *Shore v Federal Express Corp*, 777 F2d 1155, 1158 (CA 6, 1985).

ment of employment if it is offered. [*Rasheed, supra,* p 120.]
In some instances, a plaintiff is obligated to accept an offer
of reinstatement or his damages are cut off. *Id.* [221 Mich
App 286.]

This statement of the law is error both because it
imposes a burden on the plaintiff that is more rigor-
ous than his duty to use reasonable efforts to mitigate
damages, see part I, and because it implies that
acceptance of offered reinstatement is in some way
meaningfully different from acceptance of "like
employment" from another employer.

*Whenever* a plaintiff is offered "like employment,"
he is obligated to accept it or lose his right to contin-
uing back and front pay. The defendant, however, still
has the burden of proving that the offered employ-
ment was, indeed, "like employment," and that the
plaintiff was "unreasonable" in rejecting it. We recog-
nized in *Rasheed* that rejection of an *unconditional*
offer of reinstatement "may be used as proof of an
unreasonable rejection in satisfaction of the
employer's burden." *Id.,* p 129. It is important to note,
however, that

> if there are any differences between the offer and the previ-
> ous employment position, with the exception of backpay,
> then a discharged employee's act of rejection, if based in
> part on that difference or condition, precludes a peremp-
> tory court ruling. Rather, the question of reasonableness is
> one of fact that must take into account the particular cir-
> cumstances of each case. [*Id.*]

In the instant case, the Court of Appeals recognized
that defendant's reinstatement offer was conditional,
and that "[t]he trial court apparently found that the
offer was patently unreasonable because it was made

more than two years after the termination of plaintiff's employment. Timing alone, however, does not make an offer of reinstatement unreasonable . . . ." 221 Mich App 290. This statement ignores the dispute between the parties over whether the job offer in question was in fact a legitimate offer, or, rather, merely a trial tactic.

"[T]he question of reasonableness is one of fact that must take into account the particular circumstances of each case." *Rasheed, supra*, p 129. The trial court in the instant case did not document its findings regarding the legitimacy of the September/October 1992 job offer, and whether the plaintiff was reasonable in rejecting it. Such findings are necessary to proper appellate review of whether the trial court erred in determining that the defendant failed to meet its burden of showing that the plaintiff was unreasonable in his efforts to mitigate damages. See MCR 2.517(A)(2) ("Brief, definite, and pertinent findings and conclusions on the contested matters are sufficient, without over elaboration of detail or particularization of facts").

This case must be remanded to the circuit court for a specific finding regarding the plaintiff's reasonableness in rejecting the defendant's purported job offer in September and October of 1992. If, on remand, the circuit court finds that the plaintiff unreasonably rejected the defendant's offer of employment, then the plaintiff is not entitled to back pay after September 1992, and to no front pay whatsoever. If, on the other hand, the circuit court finds that the plaintiff's rejection was reasonable, the original award of front pay and the award of back pay after September 1992, should both be reinstated in full.

III

The remaining questions before this Court involve the Court of Appeals reversal of the trial court's findings on factual issues.[13] We are unable to find clear error in the trial court's findings. See MCR 2.613(C) ("[R]egard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it").

A

The Court of Appeals ruled, sua sponte, that "[b]ecause plaintiff admitted that he was disabled and collected disability benefits until February 1990, the trial court's award of back pay from October 1, 1989, as opposed to February 1990, was clearly erroneous. Indeed, the act of discrimination did not occur until after plaintiff was no longer disabled." 221 Mich App 287. There is no basis in the evidence for this holding.[14]

---

[13] The plaintiff argued that the defendant failed to preserve issues relating to whether the trial court erred in its findings of fact, because it did not file the proper postjudgment motions. The court rules preclude the plaintiff's argument on this point: "No exception need be taken to a [trial court] finding or decision." MCR 2.517(A)(7).

[14] Another potential basis of this holding is the equitable doctrine of judicial estoppel, but that doctrine cannot properly be applied to the facts of this case. See *Paschke v Retool Industries*, 445 Mich 502; 519 NW2d 441 (1994).

Furthermore, there is substantial evidence in the record that Clawson Tank, in the person of its personnel manager, suggested that the plaintiff apply for disability insurance and helped him fill out the necessary forms. The defendant cannot benefit from equity when it comes before the court with unclean hands, " 'however improper may have been the behavior of [the plaintiff].' " *Mudge v Macomb Co*, 458 Mich 87, 109, n 23; 580 NW2d 845 (1998), quoting *Stachnik v Winkel*, 394 Mich 375, 382; 230 NW2d 529 (1975).

The plaintiff admitted that he had received disability benefits between October 1989, and February 1990, but the "act of discrimination" undoubtedly occurred when the plaintiff was fired. The latest date on which this might have happened was September 29, 1989, when the defendant gave the plaintiff a letter of recommendation, stating that "the decision was made not to allow Mr. Morris to return to work. We simply cannot put his remaining eye in . . . danger."

It is inappropriate to infer from the plaintiff's receipt of disability insurance during this period, that he was unable to work and, therefore, had not yet been discriminated against. This Court has noted that a disability may exist where there is " 'the possibility of some physical capacity for work which is thwarted by the inability to get a job for physical reasons.' " *Paschke v Retool Industries*, 445 Mich 502, 513; 519 NW2d 441 (1994), quoting 1C Larson, Workmen's Compensation Law, § 57.65, p 10-492.50.

> "[An] injured claimant may honestly represent to the Employment Security office that he is able to do some work, and with equal honesty tell the Compensation Board later that he was totally disabled during the same period since, although he could have done some kinds of work, no one would give him a job because of his physical handicaps." [*Id.*, pp 513-514.]

This was precisely the situation in the instant case: because of the plaintiff's physical handicap, the defendant denied him a chance to work, despite his willingness and ability to do so. 221 Mich App 284-286.

We cannot agree with the Court of Appeals that the trial judge erred in finding that the plaintiff was discriminated against before October 1, 1989.

B

The Court of Appeals stated that "the trial court's award of front pay for the period after February 1993, when plaintiff obtained like employment, was clearly erroneous because plaintiff incurred no damages after that time." 221 Mich App 291. No further support is given for this statement, despite the trial court's specific finding on the basis of evidence in the record that the plaintiff's front-pay damages amount to $75,814. The trial judge, in making this ruling, had the benefit of expert testimony and the reports of those experts. The Court of Appeals is obligated to respect this finding unless it is determined to be clearly erroneous. MCR 2.613(C). There must be some reasoning to support such a determination.

The amount of the circuit court's award of front pay to the plaintiff was fully supported by the record and well within its discretionary authority to grant. See *Riethmiller, supra,* pp 200-201. The Court of Appeals erred in reversing the front-pay award on this basis. If, on remand, the circuit court determines that the plaintiff was reasonable in rejecting the defendant's September/October 1992 job offer, this front-pay award should be reinstated.

IV

The Court of Appeals utilized a legally erroneous standard in determining whether the plaintiff had properly mitigated damages. Furthermore, the Court

of Appeals failed to properly observe the clearly erroneous standard in reviewing the factual findings of the trial court. When evaluated in light of the proper legal standards, there was sufficient evidence in the record to support the findings of the trial court.

For these reasons, the judgment of the Court of Appeals is reversed, and this case is remanded to the circuit court for a determination whether the defendant met its burden of showing that the plaintiff unreasonably rejected its conditional offer of employment, and, therefore, whether the awards of front and back pay after September 1992, are appropriate. Otherwise, the rulings of the circuit court are reinstated in full.

MALLETT, C.J., and CAVANAGH and KELLY, JJ., concurred with BRICKLEY, J.

WEAVER, J. (concurring). I agree with the majority that the doctrine of mitigation requires the victim of wrongdoing to make reasonable efforts to mitigate damages or forfeit the right to back pay. Further, and pursuant to the doctrine of mitigation, where the victim of wrongdoing refuses an offer of "like employment," e.g., employment that is substantially equivalent to the employment lost by wrongdoing, the victim also forfeits the right to continuing back pay and front pay. The defendant bears the burden of proving that the victim's efforts to mitigate damages was unreasonable.[1] Because I agree with the majority that the trial court's award of back pay after August

---

[1] Where an offer of reinstatement is unconditional, the burden shifts to the victim to demonstrate that rejection of the offer was reasonable. *Rasheed v Chrysler Corp*, 445 Mich 109, 132; 517 NW2d 19 (1994); SJI2d 105.41.

1990 was not clearly erroneous, I concur that the award should be reinstated.

Further, I concur with the majority's result in section III(A). The plaintiff's receipt of disability from September 1989 through February 1990 does not preclude a concurrent award of back pay, although the trial court correctly reduced the back pay award by the amount of disability payments.

I also concur that remand is necessary to determine whether the plaintiff's rejection of the September and October 1992 job offers was reasonable. If the defendant demonstrates that plaintiff's rejection was unreasonable, plaintiff is entitled to neither back pay nor front pay after October 1992. However, it remains unclear whether the trial court correctly applied the doctrine of mitigation to the front pay award.

This Court has yet to define the limits of front pay awards, and the Legislature has offered the courts no direction, despite the potential effect of such awards. Even lacking specific guidance, the facts of this case may support a modified award of front pay after plaintiff accepted a substantially similar position in February 1993.

Plaintiff in this case was twenty-two years old when he was discriminatorily discharged. He had been working for Clawson Tank for only nine months. The front pay award of $75,814 assumes plaintiff would have continued working for Clawson Tank until he retired at the age of sixty-two. The award was calculated using a growth rate of 5.26 percent a year of the present value of the difference between his future earnings at defendant Clawson Tank and Cranbrook Schools.

Front pay awards are speculative by nature. The
Sixth Circuit has expressed concern regarding the
uncertainty and potential effect of front pay awards
cautioning that "an award of front pay must be gov-
erned by the sound discretion of the trial court and
may not be appropriate in all cases." *Davis v Com-
bustion Engineering, Inc*, 742 F2d 916, 923 (CA 6,
1984). *Davis*, for example, stated:

> [T]he award of front pay to a discriminatorily discharged
> 41 year old employee until such time as he qualifies for a
> pension might be unwarranted. On the other hand, the fail-
> ure to make such an award for an employee age 63, like-
> wise discriminatorily discharged, might be an abuse of dis-
> cretion. [*Id.*]

Michigan courts also have recognized the uncer-
tainty of front pay awards. In *Riethmiller v Blue
Cross & Blue Shield of Michigan*, 151 Mich App 188,
201; 390 NW2d 227 (1986), the Court of Appeals
wisely warned that front pay represents "the possibil-
ity of substantial monetary liability for some employ-
ers." *Riethmiller* also enumerated relevant considera-
tions in the determination whether to award front pay
including: "(1) whether reinstatement would be a fea-
sible remedy, (2) the employee's prospects for other
employment, and (3) the number of years remaining
before the employee would be faced with mandatory
retirement." *Id.*, pp 200-201. Implicit in the second
consideration regarding a plaintiff's prospects for
other employment is the relevance to the award of
front pay of a plaintiff's actually obtaining other
employment.

Beyond those considerations enumerated in
*Riethmiller, supra*, the Sixth Circuit considers the
following factors relevant to the award of front pay:

(1) the employee's future in the position from which she was terminated; (2) her work and life expectancy; (3) her obligation to mitigate her damages; (4) the availability of comparable employment opportunities and the time reasonably required to find substitute employment; (5) the discount tables to determine the present value of future damages; and (6) "other factors that are pertinent in prospective damage awards." [*Suggs v ServiceMaster Ed Food Management*, 72 F3d 1228, 1234 (CA 6, 1996).]

The federal courts thus recognize plaintiffs are obligated to mitigate their future damages as well as back pay damages. See *Shore v Federal Express Corp*, 42 F3d 373, 378 (CA 6, 1994).

There is an obligation to mitigate future damages. In this case, the record does not adequately reflect whether the trial court properly considered the mitigation principles with respect to future damages. It remains to be determined what constitutes future damages. As a result, I would remand not only to determine whether the plaintiff was reasonable in rejecting the defendant's September and October job offers but also to reexamine the issue of front pay in light of the principles set forth in this opinion.

BOYLE, J., concurred with WEAVER, J.

TAYLOR, J., took no part in the decision of this case.